## HYATT ROLLER BEARING CO. v. UNITED STATES, and four other cases.

### Nos. B–426 to B–430.

Court of Claims.

Oct. 20, 1930.

1010

of New York City, on the brief), for plaintiffs.

E. C. Lake, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen. (Fred K. Dyar, of Washington, D. C., on the brief), for the United States.

Charles R. Carroll, of New York City (Bright, Thompson, Hinrichs & Warren, of Washington, D. C., and John Thomas Smith,

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

The issues involved in these cases are all essentially questions of fact.

As to the actual cash value of the stocks of the plaintiffs paid in to the United Motors Corporation for its stock, we have found the fact to be that the value of the stocks of the Hyatt Roller Bearing Company, the Remy Electric Manufacturing Company, and the Dayton Engineering Laboratories Company, and 13,000 shares of stock of the Perlman Rim Corporation, paid in was $60,947,900 at the time of such payment, and that the cash values of the additional shares of the Perlman stock paid in between June 6, 1916, and June 15, 1917, were as set forth in Finding 11. These values are clearly warranted and are fully established by the evidence. The capital stocks of the Hyatt Roller Bearing Company, the Remy Electric Manufacturing Company, and the Dayton Engineering Lab-

oratories Company were at all times closely held, and there was no established market price for them. The stocks of the United Motors Corporation and the Perlman Rim Corporation were extensively bought and sold upon recognized stock exchanges. The plaintiffs submitted voluminous proof relative to the various sales of United Motors and Perlman Rim stock and as to the values of the tangible and intangible assets of all of the plaintiffs at the time the stocks were paid in to United Motors Corporation, all of which fully justifies the cash values which we have found for all of the stocks paid in to United Motors Corporation for its stock for consolidated invested capital purposes.

The defendant contends for a cash value for the stocks of plaintiffs paid in to United Motors upon the basis of small numbers of shares changing hands between stockholders from time to time prior to and near the time of the acquisition of the stocks by United Motors. We have examined such sales in the light of all of the other facts established by the testimony, and values based upon such contention are clearly shown not to be a fair basis for arriving at the actual cash values of the stocks paid in. The findings dispose of this question, and no useful purpose would be served by a lengthy discussion of the various contentions advanced by the parties relative to the values contended for by them.

The fair market values on March 1, 1913, which we have found for patents are clearly established by evidence of the position which the owners of such patents occupied in the industry and by facts relative to earnings attributable to such patents and by opinion evidence of value by those fully qualified to testify relative to the values of such property.

■ The allowances for depreciation upon the basis of the March 1, 1913, values have been computed upon the basis of the life of the principal patents. When the allowance is computed upon patents issued subsequent to March 1, 1913, upon the basis of the fair market value of the applications made prior to that date, the allowance begins from the date of issuance of the patent and is computed upon the basis of the remaining life thereof. This is the recognized method for computing allowances for exhaustion of patents in such cases. Individual Towel & Cabinet Service Co., 5 B. T. A. 158; Hartford-Fairmont Co., 12 B. T. A. 98; A. E. Starbuck, Administrator, 13 B. T. A. 796.

In the case of Perlman Rim Corporation patent, No. 1052270, it appears that this patent, together with all rights to damages and profits for infringement of such patent prior to such acquisition, was acquired by the Perlman Rim Corporation on March 15, 1916, from Louis H. Perlman for 36,000 shares of stock and an annuity of $25,000 a year for the life of the patent. At the time of this acquisition the United States courts had found infringement and had granted an injunction and decree for accounting. Perlman v. Standard Welding Co. (D. C.) 231 F. 453, affirmed (C. C. A.) 231 F. 734.

■ Subsequent to December, 1916, the Standard Welding Company, then known as the Standard Parts Company, issued its check to the Perlman Corporation for $1,010,000 in settlement of all claims for infringement. The facts establish and we have found that the fair market value of the stock of the Perlman Corporation issued in payment for this patent and rights to damages for infringement was $137.50 a share. Upon the basis of this value and the value of the annuity, the cost to the Perlman Corporation of said patent was $3,816,850. Upon this cost the allowance for exhaustion should be computed on the basis of the remaining life of the patent at the date acquired.

■ In this connection the defendant contends that the check received by the Perlman Corporation from the Standard Parts Company constituted taxable income and, inasmuch as the Perlman Corporation had not reported the same in its return, its income should be increased accordingly. There is no merit in this contention. The Perlman Corporation purchased the right to whatever damages might be recovered for infringement of the patent for stock and to that extent the matter was therefore a capital transaction. The subsequent receipt by the corporation of a check from the Standard Parts Company was nothing more than the conversion of this asset, and no taxable income was received.

With reference to the matter of allowances for exhaustion, wear, and tear of the plants and equipment, the proof does not satisfactorily show that the values and costs of such assets as determined by the Commissioner of Internal Revenue, upon which he computed his allowances, were incorrect. The facts do establish, however, that in almost every case the rates used by the defendant in computing the allowances made were too low. The defendant, while conceding that unusual conditions existed in the plants of

the plaintiffs, held that the efforts of plaintiffs to keep their plants, machinery, and equipment in a high degree of efficiency had prevented any extraordinary depreciation within the taxable year. He therefore applied the normal rates in computing exhaustion of such property under usual and ordinary circumstances on the basis of a life of 50 years for buildings, $12\frac{1}{2}$ years for machinery, and 10 years for laboratory equipment and office furniture. The defendant allowed as deductions the total amounts expended for dies, jigs, tools, patterns, and drawings during the taxable year. The facts show that the plants of the plaintiffs were in almost constant operation during the taxable year; that plaintiffs were compelled to employ to a large degree in the operation of their plants and equipment persons who were unskilled and incompetent properly to operate and care for the various classes of machinery and equipment; and that, although plaintiffs made every effort to maintain their properties in good condition and to keep their machinery and equipment in a proper state of efficiency, the circumstances and conditions were such that they were not able properly to do this so as to prevent unusual exhaustion, wear and tear. We have set forth in the findings the rates which should be applied in computing the allowances for exhaustion, wear, and tear for the taxable year for the physical assets of the plaintiffs.

The claim of the defendant that plaintiffs may not recover because the tax in question was not paid under protest is not justified. These are suits against the United States. Section 252 of the Revenue Act of 1918, 40 Stat. 1085, is mandatory in its provision that any overpayment of tax shall be refunded or credited, and sections 1316 and 1318 of the Revenue Act of 1921, 42 Stat. 314 (26 USCA §§ 156, 157), authorize suits for refund if claims for refund are filed. Under these sections and section 145 of the Judicial Code (28 USCA § 250), the right of plaintiffs to maintain the suits and the authority of the court to render judgments for refunds cannot be made to depend upon whether the tax was paid under protest. United States v. Hvoslef, 237 U. S. 1, 35 S. Ct. 459, 59 L. Ed. 813, Ann. Cas. 1916A, 286; Greenport Basin & Construction Co. v. United States (D. C.) 269 F. 58; Farmers' Loan & Trust Co. et al. v. United States, 64 Ct. Cl. 516. In these cases claims for refund were duly filed and suits were timely instituted. Plaintiffs are therefore entitled to judgments for refund of such amounts as may have been overpaid.

The records do not contain sufficient information with reference to noncontested matters relating to consolidated invested capital and consolidated income for income and excess-profits tax purposes to enable the court to make a computation of the tax and to determine the amounts for which plaintiffs are entitled to judgment. The parties will therefore make a computation of the income and profits tax liabilities of the plaintiffs and the other corporations with which they were affiliated during the taxable year and file a stipulation of the amounts to be included in the judgments to be entered in favor of the plaintiffs.

Entry of judgment in each case will therefore be withheld pending the filing of such stipulation or computation.