## GARRISON BROS. STATE BANK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7105.

Circuit Court of Appeals, Ninth Circuit.

Nov. 6, 1933.

Raymond G. Wright, of Seattle, Wash., for appellant.

Pat Malloy, Asst. Atty. Gen., and J. Louis Monarch and John MacC. Hudson, Sp. Assts. to Atty. Gen. (E. Barrett Prettyman, Gen. Counsel, and Philip A. Bayer, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

The petitioner disposed of its business and good will to a new bank, called the Bank of Sumas, organized for that purpose. The appellee determined that it made a profit of $8,614 on the transfer, which amount was taxable income, being net profits from the sale of its banking business. The commissioner claimed that for the consideration of $40,000 paid by the newly organized bank, $10,000 of which was paid to Loomis and Brygger, the petitioner transferred assets of the net worth of $31,386, leaving a profit of $8,614. Petitioner's building was transferred at a value of $6,000, and its furniture and fixtures at $2,000, while the depreciated cost of these assets was $9,386, resulting in a loss of $1,386 from the transfer of these assets. After deducting this $1,386 from the $10,000, the commissioner held the balance of $8,614 to be taxable income. The petitioner claims, however, that the $10,000 belonged to Loomis and Brygger, its sole stockholders, and was paid to them for their services in promoting the exchange. The controversy in the case depends upon the question of whether or not $10,000 was income to the petitioner, or belonged to Messrs. Loomis and Brygger, to whom it was paid by the Bank of Sumas.

The evidence shows that Ralph Loomis obtained an option to buy not less than 390 of the total 400 shares of the stock of the petitioner; that with the assistance of the Marine National Bank, represented by Albert Brygger, its vice president, Loomis exercised the option and thereafter all the capital stock of the petitioner was owned by Loomis and Brygger. Thereupon Brygger, Loomis, and Dunlap, and others, formed the Bank of Sumas, in August, 1926, with an authorized capital stock of $25,000, and paid-in surplus of $5,000; 250 shares of stock of the new bank were sold to various parties at $160 a share, netting $40,000; $30,000 of this amount was set up as capital and surplus for the new bank; the balance of $10,000 which, under the agreement for the promotion of the new corporation, was to be paid to the petitioner for good will, was turned over to Loomis and Brygger. All petitioner's assets except $19,932.20 in securities, $1,000 in real estate, and $5,815.88 in cash, were transferred to the Bank of Sumas, which assumed the liabilities of the petitioner to its depositors. The agreement between the petitioner and the Bank of Sumas for the sale is not disclosed in the evidence; apparently $26,748.08 of the assets of the petitioner were retained by it, and the balance, having a net value of $31,386, was transferred to the Bank of Sumas, for which $40,000 was paid to the petitioner, of which the $10,000 in question was paid to the petitioner as a part consideration for the sale of its assets.

The report of the internal revenue agent, which was offered in evidence by the petitioner, stated that the consideration for the sale was $40,000, and that the net worth of the assets transferred was $31,386, and that the profit was $8,614.

Ralph Loomis testified: "The stock in the Bank of Sumas was paid for by George Dunlap, Dr. Dork, G. A. Owen, and F. G. Dillinghast, and several others who paid $160 per share, totalling $40,000; $30,000 of which went to the Union Trust Company (in Bellingham) to set up the capital and surplus of the new Bank of Sumas, and the balance of $10,000 went to Brygger and me." On cross-examination the witness testified that of the

$40,000 paid by the subscribers to stock in the new bank, $10,000 was paid "to Brygger and me, and this amount is the amount referred to in the agreement between the stockholders of the new bank as the amount to be paid for the good will of Garrison Brothers State Bank."

Albert Brygger testified that Ralph E. Loomis, who was the president of the Union Trust Company, proposed to the Marine National Bank that they purchase the Garrison Brothers State Bank and divide the profits personally between Mr. Loomis and the Marine National Bank, and that the profit of $10,000 was subsequently divided between Mr. Loomis and the Marine National Bank.

It is clear that the $10,000 paid for the good will of the petitioner belonged to the petitioner and constituted a part of its income.

In view of the fact that the money was actually paid to and retained by the two individuals who owned all the stock of the corporation and controlled its affairs, no doubt the petitioner failed to get possession of the money which, although belonging to it, would eventually go to its stockholders upon dissolution. The fact that it has neglected to recover this money from its own stockholders, and does not now claim ownership thereof in this proceeding, does not alter the fact that the money belongs to the petitioner and is held in trust for it by its stockholders.

Order affirmed.