## EASTERN CARBON BLACK CO. v. BRAST, Collector of Internal Revenue.

### No. 4424.

Circuit Court of Appeals, Fourth Circuit.
June 12, 1939.

Robert S. Spilman and J. M. Woods, both of Charleston, W. Va. (A. B. Hodges and Price, Smith & Spilman, both of Charleston, W. Va., on the brief), for appellant.

Ellis N. Slack, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and Joe V. Gibson, U. S. Atty., of Kingwood, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is a suit by a taxpayer to recover $54,184.99 with interest, representing deficiency assessments of federal income and profits taxes for the year 1919 paid under protest. From a judgment in favor of the

collector, the taxpayer has appealed. The principal question involved is the correctness of the deficiency assessments. Questions were raised in the court below involving the statute of limitations and the propriety of depletion allowances made taxpayer by the commissioner, in addition to those involving the correctness of the deficiency assessments; but as these questions become immaterial if the deficiency assessments were correct, as we think they were, we need not consider them.

Taxpayer is a corporation which between 1913 and 1928 was engaged in the manufacture of carbon black. One-half of its capital stock of 500 shares was owned by the George H. Morrill Company and one-half by Davis Brothers, a partnership. Between 1913 and 1919, Davis Brothers had charge of manufacturing carbon black for taxpayer and the Morrill Company had control of sales and possession of the books. By contract of 1913, modified in particulars not here relevant in 1916, taxpayer agreed to sell to the Morrill Company 1,000,000 pounds of carbon black each year at five cents per pound for a period of six years ending April 30, 1919. Between 1916 and 1919 the market price of carbon black greatly increased, reaching at one time a price of eleven cents per pound. Notwithstanding this increase, the Morrill Company not only continued to get the 1,000,000 pounds annually provided for by its contract at five cents per pound, but also took more than 2,000,000 pounds in excess of that amount at the contract price. Davis Brothers became dissatisfied with this conduct on the part of the Morrill Company and in April, 1919, they sought a conference with representatives of that company with regard to the matter, claiming that the carbon black was not being sold at as high a price as was obtainable. As a result of this conference, it was agreed: (1) that the Morrill Company should pay Davis Brothers $50,000; (2) that the product of the taxpayer which had accumulated in its warehouses and its production from then on should be equally divided between the Morrill Company and Davis Brothers and charged to them at four cents per pound; and (3) that the contracts for sale of carbon black held by taxpayer should be assigned to Davis Brothers and that Davis Brothers should account to the Morrill Company for one-half of the profit realized from filling these contracts.

The $50,000 provided for by this agreement was duly paid to Davis Brothers by the Morrill Company in the year 1919, carbon black was furnished for the remainder of the year to both Morrill Company and Davis Brothers, being divided between them equally and charged to them on the books at four cents per pound, and the contracts of taxpayer were duly assigned to Davis Brothers, who realized in filling them a profit of $24,161.42, which it divided with the Morrill Company pursuant to the contract. The amount of carbon black delivered to the Morrill Company and Davis Brothers during the year was 2,739,375 pounds each. It was charged on the books of taxpayer at four cents per pound, but an auditor of taxpayer on April 16, 1920, made an entry in the books changing this to six cents per pound, which made a difference in the price of $109,575. Later an agreement was made between the Morrill Company and Davis Brothers that the tax return for taxpayer for the year 1919 should be made on the basis of the sale of their product at four cents per pound, and the books were changed back to show a sale at four cents. Taxpayer reported net income that year of $10,412.88. The Commissioner of Internal Revenue added to this the items of $50,000, $109,575 and $24,161.42, above referred to, and made deficiency assessments accordingly.

As to the $50,000 item, it appears that, at the time of the payment of this amount to Davis Brothers, the Morrill Company made a computation for tax purposes in which it apportioned the item to the years 1917, 1918 and 1919 in proportion to the excess amount of carbon black received in each year. This allocation was set forth in a memorandum made at the time of the settlement between the Morrill Company and Davis Brothers. It was admittedly made with reference to distribution of the amount for purposes of taxation and was found in the files of taxpayer. The Morrill Company used it as a basis for making returns for the years in question, although that company did subsequently claim and was allowed deduction for the entire $50,000 for the year 1919. Davis Brothers reported the $50,000 as individual income for the year 1919, but filed petitions for refund with regard thereto, and these refunds were allowed and were received by them.

As to the $109,575 item, it appears that the contract entered into on April 23, 1919,

stipulated that the carbon black should be sold to the Morrill Company and Davis Brothers at four cents per pound. The witness Perkins, who represented the Morrill Company in the settlement in which the contract was made, testified, however, that the agreement was "that the black should be split up at as near cost as we could figure it, leaving a sufficient margin to keep from running into red figures." The auditor who changed the charge on the books from four cents to six cents was employed by taxpayer; there is no explanation in the record as to why he changed the charge from four to six cents; and in the absence of other explanation the natural inference is that the change was made to bring the charge up to cost. It is argued that this inference is not permissible because the return of the company on the basis of the four cent charge showed net income of $10,912.88; but this fact proves nothing as it does not appear from the record what the sources of income were, and the net income shown may have resulted from other transactions and may have been reduced to the small figure appearing because of losses sustained from sale at the four cent price. No reason appears for reducing the price to four cents when the five cent price had been the cause of controversy as being too low; and, that the price was to be cost and that the cost was around six cents, is shown by the fact that on April 28, 1920, just twelve days after the entry was made by the auditor changing the price from four to six cents, contracts were entered into between the Morrill Company and Davis Brothers providing that the price of 1920 should be six cents, that the price for 1921 should be subject to readjustment proportionate to any change in cost and that, if the price of six cents for the year 1920 should not be sufficient to pay the cost of manufacture during the year, the Morrill Company and Davis Brothers should pay the difference when such average cost was determined. It is significant that, at the same time, an agreement was made between the Morrill Company and Davis Brothers that the tax return for taxpayer for the year 1919 should be made out on the basis of a four cent price for carbon black during that year, and that the entry in the books changing the price back from six cents to four cents was made on that day.

It is clear from the record that, while the settlement of the controversy between Davis Brothers and the Morrill Company was the purpose of the contract entered into in April, 1919, the question of tax liability entered also into the calculations of the contracting parties; and we think that the findings of the District Judge with regard thereto are amply supported. The portions of the findings relevant to the questions before us are as follows:

"VIII. During the latter part of April, 1919, the stockholders of the plaintiff corporation met in Boston for the purpose of adjusting certain differences which had arisen between them with reference to the management and operation of the plaintiff corporation. In connection with the adjustment and satisfaction of these differences, the stockholders of the plaintiff corporation evolved a plan for relieving the plaintiff corporation from war taxes on its profits for the year 1919, both those which had been earned and those to be earned, and for distributing these profits pro rata among the stockholders without any dividend being declared by the corporation. For the purpose of putting this plan into effect, three contracts were executed on April 23, 1919. * * * One of these contracts, which was between the stockholders, the stockholders caused the plaintiff corporation to ratify and approve for the purpose of relinquishing to the stockholders its existing rights. Said stockholders caused the plaintiff corporation to execute the two remaining contracts, by which the whole production of this plaintiff corporation was sold, and agreed to be sold, one-half to each stockholder, at a price far below the market value of the product, to wit, at cost.

"IX. Pursuant to the agreements made on April 23, 1919, and as a part of the plan to avoid taxation then agreed upon by the stockholders of the plaintiff, hereinbefore referred to, the plaintiff sold and delivered during the period from May 1, 1919, to December 31, 1919, to George H. Morrill Company 2,737,375 pounds of carbon black, and also sold and delivered during the same period to Davis Bros., 2,739,375 pounds of carbon black, the two amounts being all the carbon black produced by the plaintiff during that period. The price of said carbon black specified in the said agreements as four cents per pound was an estimate of the cost of producing the said carbon black, and it was understood and agreed by the parties to the said contracts at the time the contracts were made and as one of the terms thereof, that the real price should be not less than the

cost of production. The cost of production was not less than six cents per pound. As the carbon black was produced it was billed to the said Morrill Company and to the said Davis Brothers at four cents per pound. At the close of the year, when the cost of production had been ascertained, an additional charge of two cents per pound was made on the books of the Eastern Carbon Black Company against the said Morrill Company for the carbon black sold to it, the amount of the charge being $54,787.50. At the same time a like charge was made in the same way against Davis Brothers. Thereafter, the Morrill Company and Davis Brothers agreed that the tax returns of the Eastern Carbon Black Company for 1919 should be made on the basis of a price of four cents a pound.

"X. By contract dated April 30, 1913, and modified February 28, 1916, the plaintiff agreed to sell to George H. Morrill Company 1,000,000 pounds of carbon black in each of the years 1916, 1917, and 1918 at five cents a pound. During that period an amount of carbon black greatly in excess of the contract quantity was delivered to the Morrill Company. The price which was to be paid for this excess was a matter in dispute between the stockholders at the time of their meeting late in April, 1919, previously referred to. The dispute was compromised and settled with the consent and approval of the Board of Directors and of the stockholders of the plaintiff on April 23, 1919. As a part of this settlement, and pursuant to the plan to avoid taxes agreed upon by the stockholders, and hereinbefore mentioned, the Morrill Company paid during the year 1919 directly to Davis Brothers $50,000.00. The said $50,000.00 was intended to be, and was, to cover the amount due for one-half of the excess quantity of carbon black delivered as aforesaid to Morrill Company. * * *

"XI. Pursuant to the agreements made on April 23, 1919, and as a part of the plan to avoid taxes then agreed upon by the stockholders, as hereinbefore set forth, Davis Brothers delivered and received payment for large quantities of carbon black under various contracts which had prior to April 23, 1919, been made by the plaintiff corporation with various purchasers for the sale of its carbon black to those purchasers. The fulfillment of these contracts by Davis Brothers resulted in a profit of $24,161.42, of which the Davis Brothers paid over one-half to Morrill

Company and retained the remaining half. * * *."

We think that there can be no question but that the $50,000 item was properly added to taxpayer's income. The claim which was the basis of this payment was the claim of taxpayer and not of its stockholders. The Morrill Company, which had charge of taxpayer's sales, had sold to itself at a grossly inadequate price an amount of carbon black largely in excess of what it was entitled to receive under its contract. Davis Brothers, as holders of its stock, had a grievance because taxpayer had not received for its product the price which the market justified, but the claim so asserted was a claim which could be enforced only in behalf of taxpayer. There was of course no impropriety in the stockholders' settling the controversy which had arisen by payments between themselves; but it must not be overlooked that what Davis Brothers received was in reality money belonging to taxpayer, and that its taxability as income of that corporation was not affected by the fact that it was paid directly to the stockholders aggrieved instead of to the corporation to be disbursed to them by way of dividends. As said by Mr. Justice Holmes, speaking for the Supreme Court in Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916: "The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not". And to this we may add that a corporation cannot escape taxation by permitting income to which it is entitled to be paid directly to its stockholders. Cf. Garrison Bros. State Bank v. Commissioner, 9 Cir., 67 F.2d 486.

Taxpayer is not helped by the argument that the amount was paid by one stockholder to another to settle a controversy and preserve the existing relationship. The controversy related to the fact that one stockholder had been purchasing property from the corporation for which he should have paid the corporation a greater price. Payment was recognition of the justice of the claim and, although made to the other stockholder, was in extinguishment of the corporation's claim, and corporate action was had in approval thereof. The fact that both parties together owned all of the stock of the corporation rendered it possible, by payment

from one to the other, to settle the controversy without payment to the corporation; but this cannot obscure the fact that it was a claim of the corporation which was being settled by the payment.

The case in essence is not different from that presented in Gold & Stock Telegraph Company v. Commissioner, 2 Cir., 83 F.2d 465, wherein a telegraph corporation which had leased all of its property was held liable for income tax on income derived from the property although this was paid directly to its stockholders. What we have is the receipt by a stockholder of income to which the corporation in which he holds stock is entitled, as the result of an agreement by the corporation that such income be paid to the stockholder.

The judge below held that $100,000 instead of $50,000 should have been added to the income of the corporation on account of the settlement had between Davis Brothers and the Morrill Company as to past transactions, on the theory that the payment of $50,000 to Davis Brothers was only one-half of the additional payment to which the corporation was found to be entitled by that settlement. We are inclined to agree with the trial judge in this conclusion, but the point need not be decided, as only $50,000 was added to income by the commissioner on this account.

■ With respect to the $109,575 item, arrived at by adding two cents per pound to the carbon black sold the Morrill Company and Davis Brothers during the year 1919, it appears that the market price was far in excess of the price of six cents resulting, and that the commissioner adopted the six cent figure because of the understanding that the real price should be cost of production which was six cents. We do not think taxpayer is in position to complain of this. In the case of ordinary sales, there is no point in distinguishing between market value and sale price; but, where there is a sale to stockholders below market value, this is in effect a distribution among stockholders and the price obtained is not determinative in computing income, a part of which is thus distributed. The carbon black delivered to the stockholders here was worth more than six cents a pound in the hands of the corporation.

When it charged the stockholders less than that amount for it, it was not in reality reducing its income but giving a part of that income to the stockholders. The real income of the corporation can no more be affected by such a transaction, we think, than by the payment of exorbitant salaries; and the existence of a formal contract constitutes no more justification for ignoring the real income in the one case than in the other.

■ As to the profits made on the contracts assigned by taxpayer to Davis Brothers, little need be said. These contracts were property of the taxpayer. It had the carbon black with which to fill them. When it sold this carbon black to Davis Brothers at cost and assigned to them the contracts with an agreement that the profits realized should be divided with the other stockholder, it simply transferred to stockholders the right to receive income to which it was entitled; and upon the principles heretofore stated it should be taxed upon that income. Cf. Tazewell Electric Light & Power Co. v. Strother, 4 Cir., 84 F.2d 327.

The conclusion at which we have arrived is based, not on the fact that there was an intent on the part of the parties concerned to evade taxes, but on the fact that, when regard is had to substance and not form, the income involved was in reality the income of taxpayer. The $50,000 payment by the Morrill Company to Davis Brothers was on account of carbon black sold by taxpayer at an inadequate price to one who occupied towards it the confidential relationship of agent. The $109,575 was additional value of carbon black manufactured by and belonging to taxpayer, which was distributed to its stockholders at an inadequate price. The $24,161.42 was profit realized on contracts belonging to taxpayer which were filled with carbon black which it had manufactured. We do not think that the income of the corporation can be held to be relieved of taxation because it is distributed among the stockholders in the manner set forth instead of being collected and distributed in the form of dividends.

Affirmed.