## GUARANTY TRUST CO. v. UNITED STATES.

## UNITED STATES v. GUARANTY TRUST CO.

### No. 10356.

Circuit Court of Appeals, Ninth Circuit.

Nov. 29, 1943.

Cheney & Hutcheson, Joseph C. Cheney, and Elwood Hutcheson, all of Yakima, Wash., for appellant Guaranty Trust Co.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, S. Dee Hanson, and Irving I. Axelrod, Sp. Assts. to Atty. Gen., Edward M. Connelly, U.S. Atty., and Harvey Erickson, Asst. U.S. Atty., both of Spokane, Wash., and Thomas R. Winter, Sp. Asst. to Chief Counsel, Bureau of Internal Revenue, of Seattle, Wash., for the United States.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The Guaranty Trust Company sued as liquidating trustee of Yakima Holding Corporation to recover the amount of a deficiency assessment collected from the latter on its 1935 income. The theory of the suit was that the income for which the deficiency was assessed was not that of the Holding Corporation but was the income of another, namely of the Yakima First National Bank. The Bank reported the income in its return for 1935, but paid no tax thereon because it suffered in that year a net operating loss.

Two transactions are involved. In respect of the first the finding below was against the taxpayer, but as to the second the holding was in its favor. Both parties have appealed. The facts are stated in the opinion of the trial court, officially reported in 44 F.Supp. 417, and need not again be recited in detail.

During 1934 and 1935 the Yakima Holding Corporation owned the stock of the Guaranty Trust Company and of the Yakima First National Bank, all three of which institutions were dominated by a small group of men. The Bank was in a shaky condition financially and examiners were insisting that the condition be remedied. The men in control were interested in the Sunshine Mining Company, the shares of which were at that time enjoying a phenomenal activity.[1] The two transactions giving rise to the income involve purchases of shares of Sunshine stock, the object of which acquisitions was the improvement of the financial position of the Bank.

Briefly, the first transaction consisted in the purchase by the Holding Corporation, in August 1934, of 7,500 shares of Sunshine stock. In April of 1935 these shares were sold by the Bank through a Seattle broker at a large profit. In the interim between the purchase and the sale the shares were entered on the books of the Holding Corporation as its property, and dividends paid thereon were retained by the Holding Corporation. At the end of 1934 a writeup on the value of the stock was entered on the books of the Holding Corporation, and the reports of that company to its own stockholders reflected its unqualified ownership of the Sunshine shares. But when the sale was made, the profits, with the exception of the writeup, were received and retained by the Bank. While there was oral testimony to the effect that the Holding Corporation acted merely in the capacity of a trustee for the Bank, the showing to the contrary, as evidenced by the facts stated above, amply justified the finding that the stock was in reality the property of the Holding Corporation. The arrangement was properly regarded by the trial court as one whereby the profits of the transaction were assigned or contributed by the Holding Corporation to the Bank, hence were appropriately taxed as income to the former.[2]

The second transaction was this: In December of 1934 the Holding Corpora-

[1] Hardy, the president of the Bank and the Holding Corporation, was also the president of the Sunshine Mining Company.

[2] Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109; Burnet v. Wells, 289 U.S. 670, 53 S.Ct. 761, 77 L.Ed. 1439; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Harrison v. Schaffner, 312 U.S. 579, 61 S. Ct. 759, 85 L.Ed. 1055; United States v. Joliet & C. R. Co., 315 U.S. 44, 62 S.Ct. 442, 86 L.Ed. 658.

tion made an agreement with Miller, one of the dominant group, for the purchase from Miller of 5,000 shares of Sunshine stock. Miller was to receive in return 4,000 shares of Holding Corporation stock on the basis of $15 per share. The contract remained executory until after the Sunshine stock had been sold. Meanwhile the stock remained in escrow. It was not entered in any fashion on the Holding Corporation's books, and the dividends thereon were paid to and retained by Miller. In April of 1935 the escrow holder delivered the stock to the Bank which sold 3,500 shares thereof at a large advance over cost, the balance of 1,500 shares being returned to and thereafter held by the Bank. The latter turned over to Miller the sum of $60,000 representative of the purchase price of the shares.

The trial court heard the witnesses and was in position to appraise the credibility and good faith of those who engineered the purchase of the Miller shares on behalf of the Bank. It found, in effect, that the Holding Corporation functioned merely as an intermediary and that the agreement of purchase had been made and consummated for the benefit of the Bank. It further found that the beneficial ownership of the shares was not in the Holding Corporation but in the Bank, and it concluded that the latter was chargeable with the income accruing upon the sale. We discover no clear error in these findings and none in the conclusion.

The government argues that the Bank was not legally competent to purchase any of the Sunshine shares for its own account. From this it appears to contend that the Bank could not become the equitable or beneficial owner of the shares, and that they must in consequence be regarded as having been the property of the Holding Corporation. The argument is predicated on principles of the law of trusts,[3] and upon the provisions of § 5136 of the Revised Statutes, as amended by the Act of June 16, 1933, 48 Stat. 184, 12 U.S.C.A. § 24. This statute provides: "The business of dealing in investment securities by the [national banking] association shall be limited to purchasing and selling such securities without recourse, solely upon the order, and for the account of, customers, and in no case for its own account, and the association shall not underwrite any issue of securities * * *. Except as hereinafter provided or otherwise permitted by law, nothing herein contained shall authorize the purchase by the association of any shares of stock of any corporation."

The trial court, on the authority of Lantry v. Wallace, 182 U.S. 536, 21 S.Ct. 878, 45 L.Ed. 1218, was of opinion that the Bank's agreement to purchase the stock was not void, but voidable only. We need not stop to consider the point. The case involves an executed transaction whereby the Bank in fact acquired the shares for its own account and paid the price exacted by the seller. There is no claim of attempted tax avoidance. If it be assumed that the transaction was in positive violation of law, the Bank was nevertheless accountable for the income arising in consequence of the acquisition, Angelus Bldg. & Inv. Co. v. Commissioner, 9 Cir., 57 F.2d 130, 132. The Holding Corporation is not to be saddled with the tax as a penalty for wrongdoing or merely because that course happens to be more advantageous to the revenues.

Affirmed.

---

[3] Restatement, Law of Trusts, § 117.