## DOYLE v. COMMISSIONER OF IN-TERNAL REVENUE.

### No. 5324.

Circuit Court of Appeals, Fourth Circuit.

Feb. 14, 1945.

Rehearing Denied April 9, 1945.

J. Gilmer Korner, Jr., of Washington, D. C. for petitioner.

Harry Baum, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is a petition of Richard S. Doyle to review a decision of the Tax Court of the United States, adverse to Doyle, determining Doyle's income tax for the calendar year 1938. The opinion of the Tax Court is reported in 3 T. C. 1092. We first attempt a brief summary of the rather complicated facts in this case and then discuss the single question of law raised by these facts.

On December 11, 1919, Briggs and Turivas (an Illinois corporation, hereinafter called Briggs) entered into a contract with the United States Shipping Board (an agency of the United States, hereinafter called the Board) for the purchase of certain steel and iron. That same day Briggs entered into a contract with Friedeberg, for a cash consideration of $12,500 which was paid by Friedeberg, under which Friedeberg was entitled to receive from

Briggs one-fourth of the steel and iron received by Briggs from the Board. On December 18, 1919, the Board breached its contract with Briggs and sold the steel and iron to another party.

Friedeberg asserted his claim against Briggs for damages growing out of the breach by Briggs of the contract between Friedeberg and Briggs. Briggs, wishing to avoid a lawsuit, proposed that Friedeberg accept, in lieu of his claim against Briggs, an assignment by Briggs to Friedeberg of a one-fourth interest in any amount of money which Briggs might recover from the Government on the claim of Briggs against the Government. This offer was definitely refused by Friedeberg.

In 1925, Briggs brought suit on its claim against the Government in the Court of Claims. While this suit was pending, Doyle, in 1928, acquired by assignment from Friedeberg, at a cost of $928.75, nine hundred and twenty-five eleven thousandths (925/11,000) of Friedeberg's claim against Briggs. The assignees of Friedeberg entered into a contract with Briggs under which Briggs agreed to pay to these assignees one-fourth (¼), after the deduction of the expenses of the suit, of the amount of the net recovery by Briggs from its suit against the Government. In 1936, Briggs recovered a judgment in the Court of Claims against the Government. That court denied (in February, 1937) an application for a new trial and the United States Supreme Court (in October, 1937) denied certiorari.

On December 31, 1937 (the last day of the tax year and more than two months after this denial of certiorari) Doyle executed two deeds of gift transferring to each of his sons twelve per cent (12%) of his interest in the claim against Briggs assigned to him by Friedeberg. On January 12, 1938, Doyle executed three other deeds of gift by which he further transferred to his two sons and to his wife each a twelve per cent interest in this same claim.

The Briggs judgment was paid by the Government on March 22, 1938. After paying the expenses of the suit, Briggs, in 1938 paid to the wife and sons of Doyle $20,955.61 and to Doyle $13,970.40. The wife and sons duly reported, for income taxation, the amounts of money so received. The Commissioner of Internal Revenue held that this amount of $20,955.61, thus paid in 1938 to the wife and sons of Doyle was taxable income to Doyle

in 1938. The Tax Court of the United States affirmed the Commissioner's action on the ground that Doyle's assignments to his wife and sons were anticipatory assignments of income.

 The brief of counsel for Doyle is an extremely interesting excursion into the field of pure analytical jurisprudence. With many of the conclusions therein reached in this field, we are in hearty accord. Yet we think the solution to the legal problem before us cannot be reached through juristic semantics. We agree that Friedeberg only had, and therefore could only assign, a chose in action, arising ex contractu, against Briggs. We agree, further, that the contract between Briggs and the assignees of Friedeberg created no in rem right to the claim of Briggs against the Government. Nor, when this claim was reduced to judgment and even after the payment of the judgment, was there any lien on the funds thereby received by Briggs. "Claims against the United States cannot be assigned until they have been allowed and a warrant issued for them." Williston on Contracts, § 417, page 776. "Nor is an agreement to pay out of a particular fund an assignment of the fund or any part of it to the promisee." op. cit. § 428, page 803.

Counsel for Doyle strenuously insists that Doyle's interest here was property, that it was a capital asset, and that, when Doyle assigned a part of this to his wife and children, he transferred to them property and a capital asset. Ergo, we are told, when this property or capital asset was transferred to the donees, and was realized by them upon its conversion into money, the resultant gain was taxable as income to these same donees and not to Doyle, the donor.

 On the other hand, counsel for the Government take a firm stand upon the battle-field of realism. Away, they say, with pure jurisprudential concepts; Doyle, after the denial of certiorari and before the transfer to the wife and children, had an enormous profit (he paid $928.75, while he and the wife and children actually received together $34,926.01), which was to all intents and purposes practically assured, and its amount in dollars and cents could be approximated with reasonable certainty, though, before the division of the proceeds of the judgment, the expenses of litigation had to be ascertained and defrayed. Ergo, Doyle's transfer in 1938 to his wife

and children, viewed in the fierce light of stark economic reality, was an anticipatory assignment of income and thus taxable to Doyle. With no little intellectual admiration for the astute argument of Doyle's counsel, we yet feel bound to approve this contention of the Government and to affirm the decision of the Tax Court of the United States.

The problem before us is close and not free from difficulty. No decided case, precisely in point, has been cited to us by counsel; our own independent search has been equally barren. Let us suppose that Spilkins has bought for $1,000 a vacant parcel of realty located in a then residential part of a growing city. The years go by, business edifices crowd all about the Spilkins lot and Spilkins has a bona fide offer of $20,000 for the lot. Spilkins now gives the lot to his son who sells it for $20,000. The resultant gain is clearly taxable to the son and not to Spilkins. The same result would follow if Spilkins bought for $10 a share 100 shares of stock in the Universal Dirt Corporation and gave them to his son who swiftly sold the shares for $200 a share.

On the other hand, if Spilkins is the beneficiary of a trust fund, from which (while the corpus is to remain intact) Spilkins is to receive only the avails or proceeds, an assignment of these avails or proceeds by Spilkins is clearly taxable to him and not to the assignee. This is equally true when Spilkins, owning corporate stock, transfers merely the dividends thereon, or when Spilkins, retaining complete ownership in a principal sum, transfers merely the interest thereon. (Needless to say, in the above examples we bypass any prohibition against the splitting of a cause of action.)

In these examples, the metaphysical analogy of the tree and the fruit is helpful. In the cases of the lot and the corporate shares, Spilkins has clearly transferred both the tree and the fruit. As to the avails of the trust fund, the dividends and the interest, Spilkins has retained the tree and divested himself of the fruit. But, in the instant case, we do not find that the tree-and-fruit metaphor, despite its figurative charm, is of great assistance in solving our problem. If we rigidly and ruthlessly apply the metaphor, it would seem that the Tax Court is wrong. Yet, here, as we view the situation, with all the dispassionate calm at our command, the tree appears, by some subtle economic alchemy, to have been virtually transmuted into the fruit.

Quite germane here, we think, are the words of Mr. Justice (now Mr. Chief Justice) Stone. In Helvering v. Horst, 311 U.S. 112, 116, 117, 61 S.Ct. 144, 147, 85 L.Ed. 75, 131 A.L.R. 655, he said:

"Underlying the reasoning in these cases is the thought that income is 'realized' by the assignor because he, who owns or controls the source of the income, also controls the disposition of that which he could have received himself and diverts the payment from himself to others as the means of procuring the satisfaction of his wants. The taxpayer has equally enjoyed the fruits of his labor or investment and obtained the satisfaction of his desires whether he collects and uses the income to procure those satisfactions, or whether he disposes of his right to collect it as the means of procuring them. * * *

"Although the donor here, by the transfer of the coupons, has precluded any possibility of his collecting them himself he has nevertheless, by his act, procured payment of the interest, as a valuable gift to a member of his family. Such a use of the economic gain, the right to receive income, to procure a satisfaction which can be obtained only by the expenditure of money or property, would seem to be the enjoyment of the income whether the satisfaction is the purchase of goods at the corner grocery, the payment of his debt there, or such non-material satisfactions as may result from the payment of a campaign or community chest contribution, or a gift to his favorite son. Even though he never receives the money he derives money's worth from the disposition of the coupons which he has used as money or money's worth in the procuring of a satisfaction which is procurable only by the expenditure of money or money's worth. The enjoyment of the economic benefit accruing to him by virtue of his acquisition of the coupons is realized as completely as it would have been if he had collected the interest in dollars and expended them for any of the purposes named."

Again, he stated, in Harrison v. Schaffner, 312 U.S. 579, 581-582, 61 S.Ct. 759, 761, 85 L.Ed. 1055:

"In construing these and like provisions in other revenue acts we have uniformly held that they are not so much concerned with the refinements of title as with the actual command over the income which is

taxed and the actual benefit for which the tax is paid. See Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L.Ed. 916; Lucas v. Earl [281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731]; Helvering v. Horst [311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655]; Helvering v. Eubank [311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81]; Helvering v. Clifford [309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788]. It was for that reason that in each of those cases it was held that one vested with the right to receive income did not escape the tax by any kind of anticipatory arrangement, however skillfully devised, by which he procures payment of it to another, since, by the exercise of his power to command the income, he enjoys the benefit of the income on which the tax is laid."

And, in this same case (312 U.S. at page 583, 61 S.Ct. at page 762, 85 L.Ed. 1055), we find:

" 'Drawing the line' is a recurrent difficulty in those fields of the law where differences in degree produce ultimate differences in kind. See Irwin v. Gavit, 268 U.S. 161, 168, 45 S.Ct. 475, 476, 69 L.Ed. 897. It is enough that we find in the present case that the taxpayer, in point of substance, has parted with no substantial interest in property other than the specified payments of income which, like other gifts of income, are taxable to the donor."

We think that the Tax Court was correct in holding that, at the time of Doyle's assignment to his wife and children, the gain that he expected to derive from his exceedingly profitable investment was practically assured. And even its amount could then be approximately determined, for there remained before distribution only the ascertainment and payment of the expenses of the Briggs litigation. If we look to the spirit rather than the letter, if we regard substance rather than form, if we fix the judicial eye on essentials rather than incidentals, it becomes apparent under our over-all view that Doyle intended to assign, and did assign, anticipatory income. Nor does it derogate from this holding that what he had, and transferred, be regarded technically as a capital asset or as being included under the elusive term, property.

The cases are clear in holding that when a taxpayer in essential reality assigns anticipatory income, this may not be masked in the guise of some allied transaction with a different name. See McInerney v. Commissioner of Internal Revenue, 6 Cir., 82 F.2d 665, where the taxpayer created an estate by entirety in himself and wife in certain realty. See, also, Eastern Carbon Black Co. v. Brast, 4 Cir., 104 F.2d 460, 464; Guaranty Trust Co. v. United States, 9 Cir., 139 F.2d 69, 70. And, in Burnet v. Leininger, 285 U.S. 136, 141, 52 S.Ct. 345, 346, 76 L.Ed. 665; Chief Justice Hughes aptly remarked:

"The respondent urges that the assignment to his wife was of one-half of the 'corpus' of his interest and that this 'corpus' produced the income in question. The characterization does not aid the contention." (Italics ours.)

We are here interested in things not labels, and we must apply the favorite motto of so many schools and colleges: Esse quam videri, to be rather than to seem.

We are not impressed by the cases which counsel for Doyle cites. Thus, in Hyatt Roller Bearing Co. v. United States, 43 F.2d 1008, 70 Ct.Cl. 443, the transferror assigned both his entire interest in the patent and the right to recover damages against an infringer of the patent. In Estate of Timken v. Commissioner of Internal Revenue, 47 B. T. A. 494, there was a transfer not of mere interest alone but of the note also, and the Board was careful to point out: "After the execution of the deeds of gift the decedent had no interest whatever in the gift property." In these cases, there was a complete divestiture by the transferor of his entire interest in the gift property, while, in the instant case, Doyle transferred three-fifths (3/5) to his own wife and minor sons and retained two-fifths (2/5). In these cases, and in the supposed realty and corporate shares transfer by Spilkins, an affirmative act was needed on the part of the transferee, as sale by him, before there could be any realization of gain, but, here, there was nothing of this nature required of Doyle's wife and children. They merely had to wait (and that not for long) for the expected benefits to fall (and they did quickly fall) right into their economic laps. They well knew (as did Doyle) that a rare piece of good fortune was "right around the corner" without even the necessity of their going to meet it; or, in a picturesque phrase of the Blue Ridge mountaineers, they could well smile in clear anticipation that "It was about to snow in their hats."

Finally, the equities (if that word be used in its broadest connotation) here can hardly be said to favor Doyle. He has made an extremely fortunate investment. For years he does nothing. Then, when he is confident that a gain of over 2,000

per cent is in the offing, or (to put it more crudely) when a huge profit is practically "in the bag", he assigns (by one assignment on the last day of the tax year, 1937, and another assignment less than two weeks thereafter in a new tax year, 1938) three-fifths of this to *his wife and minor sons,* to whom he owes both the legal and moral duty of support. The money sent to the sons is deposited in a bank to the credit of the minor sons, but remains absolutely under the control of Doyle, who actually did (until his appointment some years later as guardian) exercise this control. The money deposited to the wife's account could not be withdrawn by Doyle, but the wife could use this money to relieve him pro tanto of his legal duty to support her. And Doyle managed the wife's investments. Certainly, under all these circumstances, the question might well be asked: does not this whole transaction present the stigmata of a deliberate attempt at tax evasion?

We close with a quotation from the opinion of Mr. Justice Douglas in Helvering v. Clifford, 309 U.S. 331, 336, 337, 60 S.Ct. 554, 557, 84 L.Ed. 788:

"It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship respondent retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had. To exclude from the aggregate those indirect benefits would be to deprive § 22(a) [26 U.S.C.A. Int.Rev.Acts, page 669] of considerable vitality and to treat as immaterial what may be highly relevant considerations in the creation of such family trusts. For where the head of the household has income in excess of normal needs, it may well make but little difference to him (except income-tax-wise) where portions of that income are routed—so long as it stays in the family group. In those circumstances the all-important factor might be retention by him of control over the principal. With that control in his hands he would keep direct command over all that he needed to remain in substantially the same financial situation as before. Our point here is that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership and are appropriate foundations for findings on that issue. Thus, where, as in this case, the benefits directly or indirectly retained blend so imperceptibly with the normal concepts of full ownership, we cannot say that the triers of fact committed reversible error when they found that the husband was the owner of the corpus for the purposes of § 22(a). To hold otherwise would be to treat the wife as a complete stranger; to let mere formalism obscure the normal consequences of family solidarity; and to force concepts of ownership to be fashioned out of legal niceties which may have little or no significance in such household arrangements.

"The bundle of rights which he retained was so substantial that respondent cannot be heard to complain that he is the 'victim of despotic power when for the purpose of taxation he is treated as owner altogether.' "

The decision of the Tax Court of the United States is affirmed.

Affirmed.

### On Petition for Rehearing and Reargument.

PER CURIAM.

The petition for rehearing presents no point that we have not already fully considered. At the time that taxpayer executed the deeds of gift to his wife and sons, the profit on his purchase of the interest in the law suit had already been rendered certain by the judgment of the Court of Claims and denial of certiorari by the Supreme Court. The effect of the deeds of gift, therefore, was to transfer interests in this certain profit as well as interests in the original investment upon which the profit was realized. We think that the profit had been realized with sufficient definiteness at the time of the transfer to require that it be treated as income of the taxpayer and not of the transferees. The "equities" to which reference is made in the opinion have significance only to the extent that they show that the decision arrived at on the legal basis above indicated accords with what is reasonable and right in the premises. It was not intended to base the decision on fraud or bad faith, or to impute these to the taxpayer.

Petition denied.