Pauline Sturm Nalle v. Commissioner. Fred Westfall v. Commissioner.
Nalle v. Commissioner
Docket Nos. 66107, 66467.
United States Tax Court
T.C. Memo 1960-41; 1960 Tax Ct. Memo LEXIS 246; 19 T.C.M. (CCH) 212; T.C.M. (RIA) 60041; 11 Oil & Gas Rep. 950; March 18, 1960
Pauline Sturm Nalle, pro se, Edgewood Park Drive. Parkersburg, W. Va., for the petitioner in Docket No. 66107. W. Ralph Musgrove, *247 Esq., for the respondent. TRAIN
Memorandum Findings of Fact and Opinion TRAIN, Judge: The respondent asserts transferee liability against petitioner, Pauline Sturm Nalle, in the amount of $1,979.51 and against petitioner Fred Westfall, in the amount of $2,044.07 for a deficiency in the income tax of Frederick O. Funk, deceased, for 1951 and additions thereto. The only issues for decision are: (1) Whether the transferor, Frederick O. Funk, deceased, was liable for a deficiency in income tax for 1951 in the amount of $16,874.30 and additions to tax under section 294(d) of the Internal Revenue Code of 1939[1] for 1951 in the amount of $2,531.15; and (2) Whether petitioners are liable as transferees of the assets of the Estate of Frederick O. Funk, deceased, in the amounts of the distributions received by them. Findings of Fact Petitioner, Nalle, resides at Parkersburg, West Virginia. Petitioner, Westfall, resides at Claysville, Pennsylvania. In July 1931, Ora Dell Funk, wife of Frederick O. Funk, died testate in Los Angeles, California. At the date of her death, she owned a two *248 per cent oil royalty interest in the Lost Soldier Oil Field, Sweetwater County, Wyoming. In her will, she named her five surviving children as her sole heirs, and left nothing to Frederick O. Funk, hereinafter referred to as Funk. Thereafter, in August 1947, Funk elected to take against the will and instituted suit in the District Court, Second Judicial District, Sweetwater County, Wyoming, to establish a one-half interest in the above-mentioned royalties. Prior to institution of the suit on August 1, 1947, the executrices of the Estate of Ora Dell Funk received on acco nt of the above-described royalty interest the sum of $312,712.87 and from this amount made distributions from time to time to the beneficiaries under the will. Royalties which accrued subsequent to August 1, 1947, with respect to the royalty interest were impounded by the payor, Sinclair Oil and Gas Company, pending the outcome of the litigation. On March 29, 1949, Funk transferred and assigned a one-eighth interest in the property represented by the royalty interest and a one-eighth interest in the royalties impounded since August 1, 1947, to Clarence A. Brimmer, an attorney, as compensation to Brimmer for legal *249 services rendered or to be rendered by him in connection with Funk's claim against the estate. On June 3, 1950, Funk transferred and assigned to Ethel Sturm Gluff a three-eights interest to all rights, claims and demands owned by him as heir, devisee, distributee, or surviving spouse in the royalty interest as well as in the royalties impounded since August 1, 1947. The assignment recited a consideration of one thousand dollars paid by the assignee to Funk and further consideration as follows: "As a further consideration for the delivery of this deed, the said Ethel Sturm Gluff, the grantee herein, hereby covenants, agrees and contracts as follows: That she, the said grantee, will support and maintain the said Fred O. Funk, according to his station in life, during the remainder of his natural life and that she, the said grantee, shall provide a home for him in her residence wherever that may be and to provide one or more rooms, if he requires same, properly furnished with light, heat, water and such other necessities and comforts in the way of bed and bedding, furniture, etc., and also shall provide necessary and proper food, clothing, nursing, medicine, attendance of a physician *250 and such other necessaries as to make him comfortable, also proper hospitalization; and she, the said grantee, shall have charge of, and shall at her own expense pay for, a decent and proper burial for the said party of the first part in keeping with his station in life." Thereafter, on September 12, 1950, the parties to the litigation entered into a settlement agreement relative to the division of the interest. In its Decree of Final Settlement of Account and Order of Distribution, dated February 22, 1951, the State Court approved and adopted the terms of the settlement agreement. In the order the Court noted that under the laws of the State of Wyoming, Funk was entitled to five-tenths of the two per cent royalty interest. However, on the basis of the settlement agreement, the Court modified the distribution of the proportionate shares. It decreed that Funk and his assignees were entitled to receive an interest in the royalty income which had accrued during the period of August 1, 1947, to June 30, 1950, amounting to the sum of $197,424.51, to be paid and distributed by the executrices of the estate as follows: (a) to Funk, five-thirty-seconds thereof; (b) to Clarence A. Brimmer *251 as assignee of Funk, one-eighth thereof; and (c) to Ethel Sturm Gluff, as assignee of Funk, one-eighth thereof. The State Court further found that Funk was entitled to a one-sixteenth lifetime interest in the said two per cent royalty interest, belonging to the Estate of Ora Dell Funk, from and after July 1, 1950. The Court found that royalties in the amount of $34,803.87 had accrued between July 1, 1950, and January 31, 1951, of which $32,911.01 was available for distribution. During the taxable year 1951, Funk and his assignees received the sum of $80,203.76 from the royalty income that had accumulated during the period August 1, 1947, through June 30, 1950, pending the outcome of the suit instituted by Funk to establish his dower interest in and to the assets of his deceased wife's estate. Funk also received the sum of $5,971.29 in 1951 which represented his one-sixteenth interest in the royalty income accrued after June 30, 1950. Of that amount, $2,175.25 represented royalty income accrued before February 1, 1951. With the exception of the royalties accruing after February 1, 1951, all the above royalties were received by the executrices in 1951 and distributed by them in *252 that year. Funk did not file a declaration of estimated tax for the year 1951. Funk did not report any of the above amounts as income. Funk died testate at Parkersburg, West Virginia, on June 20, 1952. Ethel Sturm Gluff qualified as executrix of his estate on July 1, 1952. The estate was appraised at $27,775.72 which consisted of checking and savings accounts and uncashed checks. The petitioners, Pauline Sturm Nalle and Fred Westfall, were designated, among others, as heirs and distributees of the Estate of Frederick O. Funk. In the final settlement of the estate, the petitioner, Pauline Sturm Nalle, received as a final distributive share the sum of $1,979.51; and the petitioner, Fred Westfall, received as his final distributive share the amount of $2,044.07. Ethel Sturm Gluff, executrix of the Estate of Frederick O. Funk, distributed all of the funds that came into her hands as such and made a final and complete settlement of the estate and was discharged as executrix on October 5, 1953. Thereafter, on December 31, 1956, the respondent mailed his notice of deficiency determining a 1951 income tax liability against Frederick O. Funk, deceased. Simultaneously, notices of transferee *253 liability were mailed to the petitioners, Pauline Sturm Nalle and Fred Westfall. The respondent determined all of the income described above ($80,203.76 plus $5,971.29) to be taxable to Funk in 1951, the year in which received by him and his assignees. The respondent determined that Funk was liable for income tax in the amount of $16,874.30 and additions to tax under section 294(d) of the 1939 Code in the amount of $2,531.15 for 1951. When the Estate of Frederick O. Funk was distributed and the executrix discharged on October 5, 1953, the estate became insolvent and unable to pay the income tax deficiencies and additions to tax determined by respondent and set forth above. The respondent determined that petitioner, Nalle, had received assets without consideration and is liable as a transferee of the estate of Funk in the amount of $1,979.51, plus interest. The respondent likewise determined that petitioner, Westfall, had received assets without consideration and is liable as a transferee of the estate of Funk in the amount of $2,044.07, plus interest. Opinion The petitioners contest the respondent's determination both with respect to their liability as transferees and with *254 respect to the liability of the transferor. The petitioners contest the determination of a deficiency against Funk on several grounds. They maintain that the royalty distribution to Funk was an inheritance rather than income, that the royalties assigned to Gluff were not taxable to Funk, and that the distributions in question were made within the first 65 days of 1951 and, therefore, were taxable, if at all, in 1950. Petitioner, Westfall, cites section 162(d)(3) of the 1939 Code as authority for the latter contention. There is no basis for the argument that the distribution of the impounded royalties constituted an inheritance excludable from income under section 22(b)(3). Eugene C. Delmar, 25 T.C. 1015 (1956). In the latter case, as here, the petitioner renounced his wife's will and elected his statutory one-half share in her estate. He entered into a settlement agreement with the estate and subsequently received a distribution of his share of the estate including one-half of the income which had accumulated in the interim. We held the latter to be income taxable to the petitioner rather than a bequest excluded under section 22(b)(3). Income of an estate which is *255 distributed to legatees is taxable to the latter as income under section 162(c). Both the one-eighth share of impounded royalties ordered distributed to Ethel Sturm Gluff and the one-eighth share ordered distributed to Clarence A. Brimmer, as Funk's assignees, were included by respondent in Funk's gross income on the ground that anticipatory assignments of the right to share in future income when received does not relieve the assignor from the obligation to report such amounts as his income, citing Helvering v. Horst, 311 U.S. 112 (1940); Burnet v. Leininger, 285 U.S. 136 (1932); Lucas v. Earl, 281 U.S. 111 (1930); Richard S. Doyle, 3 T.C. 1092 (1944), affd. 147 F. 2d 769 (C.A. 4, 1945). Having included the above amount in Funk's gross income, the respondent then allowed a deduction for the full amount assigned to Brimmer ($24,678.06) as a deduction for attorney's fees. As to the royalties which accrued to the assignees subsequent to the settlement, the respondent has not included them in Funk's income because Funk transferred not only a share in the royalty income but also a share in the royalty interest itself. *256 However, as to the royalties which had already accrued prior to that time, Funk could not by the assignment shift what was his income to someone else. Moreover, there would be no basis for Funk deducting any of the amounts assigned to Gluff as the expenses which she assumed were Funk's personal living expenses. The contention that the royalty distribution in 1951 was properly reportable in 1950 is without merit. Section 162(d)(3) provides: "SEC. 162. NET INCOME. "The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that - * * *
"(d) Rules for Application of Subsections (b) and (c). - For the purposes of subsections (b) and (c) - * * *
"(3) Distributions in First 65 Days of Taxable Year. - "(A) General Rule. - If within the first 65 days of any taxable year of the estate or trust, income of the estate or trust, for a period beginning before the beginning of the taxable year, becomes payable, such income, to the extent of the income of the estate or trust for the part of such period not falling within the taxable year or, if such part is longer than 12 months, the last 12 months *257 thereof, shall be considered, paid, credited, or to be distributed on the last day of the preceding taxable year. This subparagraph shall not apply with respect to any amount with respect to which subparagraph (B) applies. "(B) Payable Out of Income or Corpus. - If within the first 65 days of any taxable year of the estate or trust, an amount which can be paid at intervals out of other than income becomes payable, there shall be considered as paid, credited, or to be distributed on the last day of the preceding taxable year the part of such amount which bears the same ratio to such amount as the part of the interval not falling within the taxable year bears to the period of the interval. If the part of the interval not falling within the taxable year is a period of more than 12 months, the interval shall be considered to begin on the date 12 months before the end of the taxable year." The executrices did not receive the impounded royalties until 1951 so that those royalties could not represent income of the estate for a prior period or periods. Petitioners have introduced no evidence with respect to Funk's failure to file a declaration of estimated tax. There is no showing that *258 Funk's gross income for 1951 could not reasonably be expected to meet the statutory filing requirement of section 58(a)(2). [2] Therefore, the respondent's determination that Funk was liable for an addition $216 to tax under section 294(d) must be sustained. Finally, we hold that the petitioners are liable as transferees of the assets of Funk's estate up to the amount of their distributions. On June 20, 1952, Funk, the transferor, died testate, naming the present transferees, *259 among others, as legatees and devisees of his estate. The assets of the estate were distributed and the executrix discharged on October 5, 1953. The petitioner, Pauline Sturm Nalle, received $1,979.51 as her distributive share, and the petitioner, Fred Westfall, received $2,044.07 as his distributive share, of the assets of the transferor. Since the transferor's estate had been distributed and the executrix discharged prior to the issuance of a notice of deficiency to the transferor dated December 31, 1956, the respondent, pursuant to section 311, asserted transferee liability against the petitioners to the extent of the assets received by each of them. Section 311 defines the term "transferee" as including heir, legatee, devisee, and distributee. The section further provides "The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax * * * imposed upon the taxpayer * * *", shall be assessed, collected, and paid in the same manner as a deficiency in tax. The above section, in substance, provides for a summary procedure whereby the unpaid tax deficiency of a transferor may be collected from a transferee of the assets of such transferor. *260 This section and its predecessor sections are merely a codification of the equitable rights of a creditor to pursue the assets of its debtor. See Phillips v. Commissioner, 283 U.S. 589 (1931); Sanger v. Upton, 91 U.S. 56 (1875). That the respondent occupies the position of a creditor in these cases is amply sustained by the authorities. It has long been established that income tax due to the United States constitutes debts. See Price v. United States, 269 U.S. 492 (1926). Furthermore, it is well settled that a transferee is retroactively liable for taxes due from his transferor even though they were not determined until after the time of the transfer. Scott v. Commissioner, 117 F.2d 36, 38 (C.A. 8, 1941); Leon Papineau, 28 T.C. 54, 58 (1957). Under West Virginia law every transfer which is not for valuable consideration is deemed to be void as to creditors. West Virginia Code (1955) c. 40, art. 1, section 3 (Michie's West Virginia Code of 1955, section 3987). The West Virginia Courts have consistently held that a creditor has an equitable right to maintain a suit against an heir or devisee to subject the assets received *261 by such person to the payment of the decedent's debts. See Crawford's Adm'r v. Turner's Adm'r, (W. Va. 1906) 52 S.E. 716, 718; and Chounis v. Laing, (W. Va. 1942) 23 S.E. 2d 628, 639. In view of the foregoing authorities, it is clear that these transferees are liable for the payment of the transferor's taxes. While under section 1119, the burden of proving such transferee liability is on the respondent, it is clear that he has carried his burden in this case by showing: (1) a gratuitous transfer of property, and (2) that the estate of the transferor after such gratuitous distribution had no assets left with which to satisfy the income tax liability of the transferor. See Arlington F. Brown, 24 T.C. 256, 266 (1955); Estate of L. E. McKnight, 8 T.C. 871, 873 (1947). Therefore, it follows that the transferees are liable to the extent of the amount of the distributions received by each of them. By way of defense as to their liability as transferees, the petitioners contend that the respondent should have asserted liability against Ethel Sturm Gluff, the discharged fiduciary of the transferor's estate. Section 311, supra, places the *262 liability of a transferee and that of a fiduciary in the same category. There is nothing in the section to indicate that the remedy therein provided against transferees is not available until after such time as the respondent exhausts the remedies against the fiduciary. This issue was considered in J. A. Kemp, 20 B.T.A. 875 (1930), and it was held that the liability of a fiduciary is at best only a secondary one, and the respondent clearly has the right to elect to proceed against the transferees without assessing the discharged fiduciary. Decisions will be entered for the respondent. Footnotes
1. All references to sections are to the Internal Revenue Code of 1939.↩
2. SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS. (a) Requirement of Declaration. - Every individual (other than an estate or trust and other than a nonresident alien with respect to whose wages, as defined in section 1621(a), withholding under Subchapter D of Chapter 9 is not made applicable, but including every alien individual who is a resident of Puerto Rico during the entire taxable year) shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if - * * *
(2) his gross income from sources other than wages (as defined in section 1621) can reasonably be expected to exceed $100 for the taxable year and his gross income to be $600 or more.↩