## LOSH et al. v. COMMISSIONER OF INTERNAL REVENUE.

No. 2901.

Circuit Court of Appeals, Tenth Circuit.

Nov. 3, 1944.

Stephen H. Hart, of Denver, Colo. (C. Keefe Hurley, Hale & Dorr, and Raymond B. Roberts, all of Boston, Mass., on the brief), for petitioners.

Warren F. Wattles, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Robert N. Anderson, and Robert Koerner, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

Both petitioners seek a review of the decision of the Tax Court sustaining a determination of deficiencies by the Commissioner in their income taxes for the year 1937. The decision turns upon whether a partnership arrangement effected a change in the economic status of petitioners within the decision of the Supreme Court in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. For convenience's sake, reference will be to A. R. Losh in the case of both appellants, and he will be referred to as petitioner.

Petitioner was a civil engineer of wide experience. From 1931 to 1935 he was technical adviser and salesman for a company selling road oils and asphalts. In the fall of 1935, petitioner, who was then 52 years old, decided to go into business for himself because he wanted to establish a business which would be available for his two minor sons. After surveying the possibilities, he located in Albuquerque, New Mexico, where he carried on a business known as the General Materials Company. He and his wife each contributed $1,000 thereto. By April, 1936, the business was progressing. His two minor sons, Thomas and Richard, took an active interest therein. They were told that in time they would be taken into the business. In the latter part of 1936 negotiations were opened for the purchase of a building materials business in Albuquerque. After many discussions between the four members of the family, the additional business was purchased. At about this time petitioners decided to give to each of their sons a fifteen per cent interest in the partnership. It was petitioners' plan to increase this interest as the boys worked more into the business. On November 30, 1936, petitioner instructed the bookkeeper in writing to set up the partnership books as of January 1, 1937, showing a thirty-five per cent interest in each of the petitioners and a fifteen per cent interest in each of the two sons. The letter to the bookkeeper contained this statement: "This is to be confidential except to Mrs. Losh and myself." Through

failure to comprehend, the bookkeeper did not set up the accounts as directed.

Petitioner's accountant advised him that the partnership arrangement should be reduced to writing. Petitioner asked the accountant to have the agreement reduced to writing. Because the sons were minors, the attorney employed by the accountant advised and prepared a written instrument denominated "Agreement and Declaration of Trust and Partnership," which was executed by petitioner. The first part of the instrument created the partnership and defined the interests of the parties, as outlined above.

The instrument created a trust of the fifteen per cent interest given to each of the two sons. It provided that their interest was not to be given to them directly in their own names; that it should be held in trust by petitioner as trustee. The trustee was given absolute power of control and management of the trust estate. He had power to add the profits of the trust estate to the capital, or otherwise invest them as he saw fit, for the best interests of the estate. He was given power to expend from time to time income of the trust as he saw fit for the comfort, education, training, care, support and welfare of the sons. The trust was to continue until the sons respectively reached the age of 25 years. It gave petitioner the power to extend the trust period for an additional ten years and allowed him to retain all trust property in the partnership for the additional time, or invest it otherwise, as he saw fit. It provided that the sons could not sell, transfer or encumber the interest during the existence of the trust; that if either son died during the initial period of the trust, leaving no heirs of his body, then the trust estate should revert to petitioner and his wife.

In addition to the broad powers of management and discretion vested in petitioner as trustee, the instrument also gave him the absolute management and control of "all the affairs a·d business of said partnership . . withou. restriction, interference or limitation." It gave him power to retain and use so much of the earnings of the partnership as in his judgment was wise as additional working capital, and to determine the time and manner of withdrawals therefrom. No one could withdraw any funds without his approval. He alone had authority to sign checks.

As is pointed out by the Supreme Court in the Clifford case, supra, technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from the payment of taxes must not obscure the basic issue, and, as stated, where the grantor is the trustee and the beneficiaries are·members of his family group, the arrangement will be specially scrutinized to be certain that a single economic unit is not multiplied in form only into several units for the purpose of evading taxes.

When so viewed, the conclusion is inescapable that in this case there was no substantial change in petitioner's economic status. The effect of the arrangement was to leave the absolute management and control of the business in his hands to the same extent as before the execution of the trust agreement. It effected no substantial change in his previous management and control of the business. Both before and after the partnership and trust agreement, the mother and the two sons assisted Losh in the operation of the business. They were boys in school, one in high school and the other in college, and worked in the business during their spare time and during vacations. It is quite apparent that petitioner wanted the boys to own this business some day. In the case of the older boy, he could keep the business intact, by means of the power to extend the trust, for at least sixteen years, during which time he had absolute dominion and control not only over the operation of the business, but over the assets thereof. During all these years, if he chose, neither of the boys could withdraw a single cent of their earnings. And while petitioner testified that they gave this interest to their sons outright, the written instrument does not bear this out. It provides that if either son died during the initial period of the trust, without issue of the body, his interest reverted to the donors. Heirs other than issue of the body would receive nothing.

Strictly speaking, petitioners did not possess the full, naked, legal interest in the property after the execution of the trust that they had before. But when viewed in the light of the family relationship and the object sought to be accomplished when they established this business, this change is more fanciful than real. Petitioner was in his fifty-third year. He could keep the

property intact for at least sixteen years, during all of which time he exercised full dominion and control over the operation of the business, as well as over the corpus of the estate and the income therefrom. At that time he would be 69 years of age. It is only natural to assume when we consider the motive which prompted him in establishing this business, ·that by then he would want to turn it over to his sons, even though this instrument had not been executed.

■ We think there are marked differences between this case and Armstrong v. Commissioner, C.C.A.10, 143 F.2d 700. A careful reading of the two cases will reveal these differences. As pointed out in the Clifford case, no one factor is decisive of a case of this nature. It must be viewed in its entirety and against the background of the family relationship. We must take into account the indirect benefits to petitioner, as well as other things. Among these are that he wanted his sons to have this business some time in the future, to be decided solely by him; that until he made that decision, he desired to remain in absolute control of the property, its income and its operation. Neither must we forget that by this arrangement petitioner relieved himself from the burden of supporting and educating his sons. Nor is it necessary in taking this into account to determine whether there was a strict legal obligation upon him under the laws of New Mexico to support or educate his sons. The obligation to support and educate one's children is one which is recognized by normal men and women, Burnet v. Wells, 289 U.S. 670, 680, 53 S.Ct. 761, 77 L.Ed. 1439; Mairs v. Reynolds, 8 Cir., 120 F.2d 857, and must be considered in viewing the over-all picture.

It is urged that no trust was intended; that only a partnership arrangement was contemplated, and that the real intent of the parties should be given effect and the trust provisions should be disregarded. It is true that the trust provisions were incorporated into the instrument by the attorney without a suggestion from petitioners. But it is abundantly clear that all the members of the Losh family were fully conversant with the trust provisions of the instrument before it was executed. Losh testified that he took the instrument home and that he, his wife, and Richard read it over before it was signed. Richard testified that it was decided that "Dad would

be managing partner and hold our interest in trust for us until we had got enough experience to handle our own shares." Losh executed the agreement in his individual capacity and as trustee for the two sons. The trust agreement was not inconsistent with the nature of the partnership or the object sought to be accomplished by the parties. The clear import of petitioner's own testimony negatives this contention.

Viewed in its entirety, it is difficult· to conclude that petitioner considered himself poorer after the arrangement was effected than he did before.

Affirmed.