### GRANT v. COMMISSIONER OF INTERNAL REVENUE.

### STRONG v. SAME.

### Nos. 3091, 3092.

Circuit Court of Appeals, Tenth Circuit.

July 19, 1945.

Valentine Brookes, of San Francisco, Cal. (Arthur H. Kent, of San Francisco, Cal., on the brief), for petitioners.

Harry Baum, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

These are petitions to review decisions of the Tax Court. The Commissioner determined income tax deficiencies for the year 1941 of $37,368.53 against petitioner Grant and $37,138.90 against petitioner Strong. The Tax Court sustained the de-

ficiencies but held that the Commissioner should have credited the petitioners with additional payments made in 1942.

The petitioners reside at Springville, Utah. In 1924, they were employed as foremen by a contracting company. In that year they decided to go into the construction business and formed a partnership under the name of Strong and Grant. They engaged in building roads and bridges and general construction work. Each had an equal interest in the partnership. On October 1, 1940, Strong executed a written instrument which purported to transfer to his wife, Norma Strong, an undivided one-half interest in the partnership of Strong and Grant. On the same day, Grant executed a written like instrument which purported to transfer to his wife, Hilda Grant, an undivided one-half interest in such partnership. The wives had contributed no capital to the partnership but at times had rendered some services to it for which they had received no direct compensation. On October 1, 1940, the petitioners and their respective wives executed a partnership agreement which recited that the petitioners had made such transfers to their wives and had agreed to admit their wives into the partnership. It provided that the petitioners and their wives should have equal interests in the partnership and should share equally in its profits and losses; that the petitioners should have charge of the office, should keep the books, and should have exclusive charge of the financial affairs of the partnership, including the receipt and collection of all moneys due the partnership and the payment of all moneys due from the partnership to others, whether in the general conduct of the business or otherwise, and that they should have the outside working management of the business; that all partnership moneys received from any and all sources should be deposited in the name of the partnership in banks selected by the petitioners, and withdrawn therefrom only by check drawn and signed by one of the petitioners. It further provided that any partner could withdraw from the partnership on thirty days' notice; that in the event of the death of either of the petitioners, the survivor should have the right to purchase the interests of the deceased petitioner and his wife, the value of such respective interests and the terms of payment to be fixed by two appraisers, one appointed by the surviving petitioner and the other by the personal representative of the deceased petitioner, and that in case of the death of one of the wives, the surviving partners might continue the partnership upon paying to the estate of the deceased wife the net value of her interest in the partnership.

A balance sheet was attached to the partnership agreement. It showed the value of the assets of the partnership, consisting of equipment, to be $175,000 and the value of each partner to be one-fourth of that amount.

Each of the petitioners filed a gift tax return in 1940 in which he reported as a gift the transfer to his wife of one-half of his interest in the partnership.

The income of the partnership before deducting salaries paid to the petitioners for the fiscal year ended September 30, 1941, was $166,766.33, and for the period October 1, 1941, to December 31, 1941, $80,638.70, or a total of $247,405.03. In 1941 and 1942, distributions were made out of the profits earned between October 1, 1940, and December 31, 1941, to Mrs. Strong and Mrs. Grant in the amounts of $52,000 and $59,000, respectively. To the partnership Mrs. Strong returned $30,000 and Mrs. Grant $26,625. Mrs. Strong's income tax for the year 1941 was $24,716.78. Mrs. Grant's income tax for that year was $27,872.31. Thus, it will be seen that, except for the amounts required for the payment of income taxes, substantially all of the distributions made to the respective wives were returned to the partnership.

The consistent policy of the petitioners had been to accumulate all profits not needed for taxes and living expenses. This policy continued after October 1, 1940.

Petitioners and their respective wives filed separate income tax returns for the year 1941 in which each reported one-fourth of the net income of the partnership for the fiscal year ended September 30, 1941, and for the period from October 1, 1941, to December 31, 1941. Partnership returns were also filed for each of such periods. Subsequent to the filing of such returns, the partners agreed that each of petitioners should receive a salary for personal services of $36,000 per year, or $45,000 for the 15-month period from October 1, 1940, to December 31, 1941. Petitioners filed

amended returns reflecting their increased income and paid the tax due thereon.[1]

At the end of 1941, the partnership was dissolved and a new partnership was formed, adding new partners.

Prior to and after October 1, 1940, each petitioner and his wife maintained a joint bank account. Prior to that date, withdrawals by each petitioner from the earnings of the business were deposited in his joint account. After October 1, 1940, withdrawals by each petitioner and his wife from the earnings of the business were deposited in their joint account. Each petitioner and his wife, both before and after such date, from their joint account, paid the expenses of maintaining their home and family.

During the 15-month period the petitioners entered into various construction contracts with the federal government. All of these contracts and the performance and payment bonds executed in connection therewith were executed in the name of "Strong & Grant', a partnership consisting of Ernest A. Strong and Joseph W. Grant, acting as joint contractors and co-adventurers." The bonding company that executed the bonds, as surety, was informed that Mrs. Strong and Mrs. Grant were members of the partnership.

Large amounts of machinery and equipment were necessary to carry on the partnership business. This necessitated large capital outlays, and capital was a substantial income-producing factor in the partnership business.

■ The Tax Court found the foregoing facts and concluded that petitioners did not intend that their wives should, in fact, be admitted into the partnership, or that any interest in the assets of the partnership business should, in fact, pass to the wives, and that petitioners' purpose was to distribute the tax burden without any actual change in ownership or control. The findings of fact are supported by the evidentiary facts and the inferences which may be drawn therefrom. The question is whether there is a rational basis for the legal conclusions reached and whether the decisions are in accordance with applicable law.[2]

■ Family partnerships are subject to special scrutiny "lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned." [3]

■ Where a husband transfers property to his wife and enters into a partnership agreement with his wife in which her contribution to the partnership is the property given to her, tax avoidance is not effected, even though legal formalities, sufficient under state law to effectuate such gift and create a partnership, have been observed, where the motivating factor is tax avoidance and the husband, in keeping with their mutual intention, continues to manage and control the partnership property and to use, enjoy, and dispose of the economic benefits derived therefrom during the taxable year in question the same as he did before the gift and the formation of the partnership.[4]

■ The question is not whether petitioners could have regained the legal title to the assets which they purportedly transferred to their respective wives, or whether, on dissolution of the partnership, the wives could compel distribution to them of their shares of the partnership assets, but rather it is who the parties intended should receive and enjoy, and who, in fact, did receive and enjoy the income realized during the year 1941.[5]

Petitioners admitted that tax avoidance

---

[1] Including the salaries paid the petitioners, the distributive shares of the partners for the 15-month period were as follows:

| Partner | Distributive Share 10/1/40—9/30/41 | 10/1/41—12/31/41 |
| --- | --- | --- |
| Ernest A. Strong | $59,691.58 | $22,321.47 |
| Joseph W. Grant | $59,691.58 | $22,321.47 |
| Norma Strong | $23,691.59 | $13,321.46 |
| Hilda Grant | $23,691.59 | $13,321.46 |

[2] Dobson v. Commissioner, 320 U.S. 489, 501, 64 S.Ct. 239, 88 L.Ed. 248; Bingham's Trust v. Commissioner, 65 S.Ct. 1232; Lorenz v. Commissioner, 6 Cir., 148 F.2d 527; Hamburger v. Commissioner, 6 Cir., 147 F.2d 856; Tyson v. Commissioner, 8 Cir., 146 F.2d 50; Hall v. Commissioner, 10 Cir., 150 F.2d 304.

[3] Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 556, 84 L.Ed. 788.

[4] Earp v. Jones, 10 Cir., 131 F.2d 292; Losh v. Commissioner, 10 Cir., 145 F.2d 456; Bradshaw v. Commissioner, 10 Cir., 150 F.2d 918; Tyson v. Commissioner, 8 Cir., 146 F.2d 50; Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L. Ed. 788.

[5] Bradshaw v. Commissioner, supra.

was a motivating factor for the formation of the purported partnership in 1940. It served no business purpose.

While we are here concerned with the year 1941,[6] it will be observed that the petitioners carefully guarded against any interest in the business passing into the hands of third parties, by providing in the partnership agreement, in the event of the death of either wife, for the acquisition of her share by the surviving partners, and on the death of either petitioner, for the acquisition of the shares of the deceased petitioner and his wife by the surviving petitioner, without the wife of the deceased petitioner having any voice in the fixing of the purchase price or the terms of payment.

While, in form, there was a transfer to each of the wives of a one-fourth interest in the assets of Strong and Grant, and a new partnership was created in which the wives were equal partners, in substance the petitioners, during the year 1941, had the full management of the business and complete control of the partnership assets and the income derived from the business. During 1941, it was the intention of the petitioners and their wives that petitioners should enjoy and, in fact, they did enjoy substantially the same economic benefits they would have realized had they retained unqualified ownership of such assets and income.

Hence, we are of the opinion that petitioners were liable for the deficiencies and the decisions are, therefore, affirmed.

---

[6] See Bradshaw v. Commissioner, supra.