## HASH v. COMMISSIONER OF INTERNAL REVENUE (two cases).
### Nos. 5411, 5412.

Circuit Court of Appeals, Fourth Circuit.
Dec. 31, 1945.

COLEMAN, District Judge, dissenting.

———◆———

Charles W. Moxley, of Charleston, W. Va. (Brown, Jackson & Knight, of Charleston, W. Va., on the brief), for petitioners.

Harry Baum, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and COLEMAN, District Judge.

DOBIE, Circuit Judge.

These companion cases present a single question. Does the record here justify us in affirming a decision of the Tax Court of the United States that the rights retained by the taxpayers in the property transferred under partnership and trust agreements, were so many, so material and so substantial as to render taxpayers liable (as to the tax years in question) for taxes on the income from this property under the provisions of Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a)? We think it does.

Taxpayers, Rose Mary Hash and G. Lester Hash (husband and wife), owned and operated jointly under equal shares in one partnership, two very successful businesses. One business, known as the Hash Furniture Company, was devoted to clothing and furniture; the other, known as the National Finance Company, was a finance concern devoted to small loans.

The husband and wife executed assignments in trust in 1940 as to the National Finance Company; in 1941, as to the Hash Furniture Company. The daughter, Rosemary, was the primary beneficiary of the trusts created by the husband, G. Lester Hash; similarly, the daughter, Doris June, was the primary beneficiary of the trusts created by the wife, Rose Mary Hash. The assignment in trust by the husband purported to convey one-half of his own holdings in the two companies (one-fourth of the total partnership holdings) for the benefit of the daughter, Rosemary; similarly, the wife undertook to convey one-

half of her holdings (again one-fourth of the total partnership holdings) for the benefit of the daughter, Doris June.

In the trusts executed by the husband, the trustees were the wife and Mann, the personal attorney of the husband and wife; in the wife's trusts, the trustees were the husband and Mann. Practically contemporary with the trust assignments, the husband and wife entered into partnership agreements with the trustees covering the continued operation of the two businesses. At the time of the execution of all these instruments, and during the tax years in question, both the daughters were minors, attending school. We agree with the Tax Court that the trust assignments of 1940 and those of 1941 were substantially alike.

We next discuss briefly the various incidents of these agreements. These were treated at some length in the opinion of the Tax Court. These incidents are treated seriatim in the brief for taxpayers, also in the brief for the Commissioner. The taxpayers, we think, fail to appreciate that however slight may be each individual retained right, we are here primarily concerned with the overall picture, the summation of the entire bundle of retained rights. When these are all added together and viewed as a whole, in the light of the surrounding circumstances, they seem to furnish ample warrant for the decision which the Tax Court reached.

Very vital is the actual control and conduct of the two businesses, after the agreements, during the tax years in question. And more important here is what was *actually done* rather than what *might have been done* under the theoretical power given to the trustees. The taxpayers managed these businesses just as before. Neither services nor capital were contributed, of course, by the schoolgirl daughters. Nor did the co-trustee, Mann, participate in the conduct of these businesses; his activities, purely perfunctory, were confined to the signing of checks and income tax returns. See Central National Bank v. Commissioner, 6 Cir., 141 F.2d 352, 153 A.L.R. 542; Bush v. Commissioner, 2 Cir., 133 F.2d 1005; Helvering v. Elias, 2 Cir., 122 F.2d 171. Profits were indeed allocated to the daughters on the books; yet these were, during the tax years before us, all plowed back in these businesses. And, by the terms of the partnership instruments, any profits not demanded by a partner within 90 days of the close of a fiscal year, were to be credited to capital account and could not thereafter be withdrawn "except in case of mutual agreement".

Quite germane here are these statements of Circuit Judge Phillips in Grant v. Commissioner (Strong v. Commissioner), 10 Cir., 150 F.2d 915, 917, 918:

"The question is not whether petitioners could have regained the legal title to the assets which they purportedly transferred to their respective wives, or whether, on dissolution of the partnership, the wives could compel distribution to them of their shares of the partnership assets, but rather it is who the parties intend should receive and enjoy, and who, in fact, did receive and enjoy, the income realized during the year 1941.

\*   \*   \*   \*   \*

"While, in form, there was a transfer to each of the wives of a one-fourth interest in the assets of Strong and Grant, and a new partnership was created in which the wives were equal partners, in substance the petitioners, during the year 1941, had the full management of the business and complete control of the partnership assets and the income derived from the business."

Not unimportant here is the provision in the trust agreement giving the trustees power to lend to these partnerships, with or without security, and to invest "in the bonds and stock of any corporation in which the grantor is a majority stockholder and officer." And here, as all through this case, it must not be overlooked that the wife is a trustee in the husband-created trust, the husband a trustee in the wife-created trust and Mann, the co-trustee, quite inactive and controlled, to all practical intents and purposes, by the husband and wife.

The instant case is strikingly similar to Losh v. Commissioner of Internal Revenue, 10 Cir., 145 F.2d 456, 457, in which Circuit Judge Huxman said:

"When so viewed, the conclusion is inescapable that in this case there was no substantial change in petitioner's economic status. The effect of the arrangement was to leave the absolute management and control of the business in his hands to the same extent as before the execution of the trust agreement. It effected no substantial change in his previous management and control of the business.

\*   \*   \*   \*   \*

"Strictly speaking, petitioners did not possess the full, naked, legal interest in the property after the execution of the trust that they had before. But when viewed in the light of the family relationship and the object sought to be accomplished when they established this business, this change is more fanciful than real".

In the leading case of Helvering v. Clifford, 309 U.S. 331, 335-337, 60 S.Ct. 554, 557, 84 L.Ed. 788. Mr. Justice Douglas said:

"But this dilution in his control would seem to be insignificant and immaterial, since control over investment remained. If it be said that such control is the type of dominion exercised by any trustee, the answer is simple. We have at best a temporary reallocation of income within an intimate family group. Since the income remains in the family and since the husband retains control over the investment, he has rather complete assurance that the trust will not effect any substantial change in his economic position. It is hard to imagine that respondent felt himself the poorer after this trust had been executed or, if he did, that it had any rational foundation in fact. For as a result of the terms of the trust and the intimacy of the familial relationship, respondent retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through the wife are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had. To exclude from the aggregate those indirect benefits would be to deprive § 22(a) of considerable vitality and to treat as immaterial what may be highly relevant considerations in the creation of such family trusts. For where the head of the household has income in excess of normal needs, it may well make but little difference to him (except income-tax-wise) where portions of that income are routed—so long as it stays in the family group. In those circumstances the all-important factor might be retention by him of control over the principal. With that control in his hands he would keep direct command over all that he needed to remain in substantially the same financial situation as before. Our point here is that no one fact is normally decisive but that all considerations and circumstances of the kind we have mentioned are relevant to the question of ownership and are appropriate foundations for findings on that issue. Thus, where, as in this case, the benefits directly or indirectly retained blend so imperceptibly with the normal concepts of full ownership, we cannot say that the triers of fact committed reversible error when they found that the husband was the owner of the corpus for the purposes of § 22(a). To hold otherwise would be to treat the wife as a complete stranger; to let mere formalism obscure the normal consequences of family solidarity; and to force concepts of ownership to be fashioned out of legal niceties which may have little or no significance in such household arrangements.

"The bundle of rights which he retained was so substantial that respondent cannot be heard to complain that he is the 'victim of despotic power when for the purpose of taxation he is treated as owner altogether.'"

See, also, decided by our Court, Doyle v. Commissioner, 4 Cir., 147 F.2d 769.

■■ There are other straws to denote the direction of the tax wind. Without elaboration we might indicate, under the trust and partnership instruments the provisions as to termination of the partnerships, the powers of the trustees to remove a beneficiary who proved untrustworthy and the possibility, though not the probability, of a reversion to the taxpayers. Nor does the record disclose any business purpose to be served by the trust arrangement. Bradshaw v. Commissioner, 10 Cir., 150 F.2d 918; Earp v. Jones, 10 Cir., 131 F.2d 292. Nor are taxpayers helped here by their contention that their motive was pure—to create adequate separate estates for their daughters; for tax incidence, in such cases, depends rather upon economic reality than upon purity of motive. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Higgins v. Smith, 308 U.S. 473, 60 S.Ct. 355, 84 L.Ed. 406; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. And we attribute no vital significance to the fact of mere book entries, under the instant set-up, in favor of the two daughters as beneficiaries. Helvering v. Midland Mutual Life Insurance Co., 300 U.S. 216, 223, 57 S.Ct. 423, 81 L.Ed. 612, 108 A.L.R. 436; Tyson v. Commissioner, 8 Cir., 146 F.2d 50.

We have carefully considered the cases cited by counsel for the taxpayers. Some of these were expressly distinguished in the cases we have cited above. There are, unquestionably, expressions in the opinions of Circuit Judge Murrah in Jones v. Norris, 10 Cir., 122 F.2d 6, and Circuit Judge Huxman in Armstrong v. Commissioner of Internal Revenue, 10 Cir., 143 F.2d 700, that lend color to the contentions of taxpayers. And we are convinced that the instant case is closer to the dividing line than was the Losh case, supra. We note that in the Jones case, though, Judge Murrah was careful to point out that the broad powers of the trustee existed "for the best interest of his beneficiaries" (122 F.2d at page 10); while we think the heart of Judge Huxman's opinion in the Armstrong case is found in the concluding paragraph (143 F.2d at page 704):

"It is our conclusion that petitioner divested himself of all economic benefit or interest in the trust estate or in the income therefrom, and that he was not in any sense the owner of the trust estate. To hold otherwise would be to say that a father cannot by deed of trust, no matter how absolute, give property to a child if he himself is the trustee and retains absolute control and management for the benefit of the estate."

■ We certainly cannot, in the instant case, upset the findings of the Tax Court and hold, against these findings, that the broad powers lodged in the taxpayers were primarily bottomed in the "interest of the beneficiaries" or that the taxpayers divested themselves of "all economic benefit or interest in the trust estate or in the income therefrom".

■ Each case in this field turns on its own facts; and our function ceases when we determine, as we do here, that the overall picture gleaned from the record furnishes ample and substantial basis for the inferences drawn by the Tax Court. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Doll v. Commissioner, 8 Cir., 149 F.2d 239; Stockstrom v. Commissioner, 8 Cir., 148 F.2d 491.

The decision of the Tax Court of the United States is affirmed.

Affirmed.

COLEMAN, District Judge (dissenting).

I find myself unable to agree with the conclusion reached by the majority of the Court in these cases.

I believe the reasoning in Armstrong v. Commissioner of Internal Revenue, 143 F.2d 700, a recent decision of the Circuit Court of Appeals for the Tenth Circuit, is sound; and while the facts in that case and those in the present cases are different in some respects, I do not find sufficient difference to warrant a different conclusion. Certainly, the facts in the cases before us are more akin to those in the Armstrong case than to those in Losh v. Commissioner of Internal Revenue, 10 Cir., 145 F.2d 456, which the majority opinion admits is not as close "to the dividing line" as are the present cases. Grant v. Commissioner of Internal Revenue, 10 Cir., 150 F.2d 915, presents facts that are even less similar. In that case, there was merely a colorable husband and wife partnership—no deed of trust involved, no actual change in ownship. Likewise, Doyle v. Commissioner of Internal Revenue, 4 Cir., 147 F.2d 769; Stockstrom v. Commissioner of Internal Revenue, 8 Cir., 148 F.2d 491 and Doll v. Commissioner of Internal Revenue, 8 Cir., 149 F.2d 239, present little analogy on their facts.

The opinion in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, broad as is its language, should not, I feel, be construed as sweeping into its fold such a situation as that before us. That case involved an entirely different situation—a short term trust with other quite different circumstances.

True, this Court is definitely restricted as respects the extent to which it may review the action of the Tax Court. But we have the right and are required to determine whether there is a rational basis for the legal conclusion reached by that Court and whether its decision is in accordance with applicable law. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. So, we must have something far more substantial to rely upon than—to use the language employed in the majority opinion—"straws to denote the direction of the tax wind," and "inferences drawn by the Tax Court."

To uphold the Tax Court in the present cases would be tantamount to saying that a parent cannot, without continuing to pay income taxes as though the property were still in fact his own, give property,

by a deed of trust no matter how absolute, to a child so long as the parent himself is one of the trustees, if—even though in the exercise of honest, business judgment the trustees feel that they can thereby best preserve and increase the child's trust estate— they invest the trust corpus in a business in which the father himself is interested and has invested his own money because he considers it a sound investment. I do not believe that Helvering v. Clifford, supra, or any decision yet rendered by the Supreme Court, requires us to go this far.