## MAULDIN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5453.

Circuit Court of Appeals, Fourth Circuit.

May 16, 1946.

TIMMERMAN, District Judge, dissenting.

Richard E. Thigpen, of Charlotte, N. C., for petitioner.

Harry Baum, Sp. Asst. to the Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and

Helen R. Carloss, Sp. Asst. to the Atty. Gen., on brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and T I M M E R M A N, District Judge.

DOBIE, Circuit Judge.

W. M. Mauldin, sometimes hereinafter referred to as petitioner, petitioned the Tax Court of the United States for a redetermination of the deficiency in his 1940 income tax liability found by the Commissioner in the amount of $5,520. This deficiency was determined by allocating to petitioner three-fourths of the income of a partnership, the Rock Hill Coca Cola Bottling Company, rather than the one-half share reported by him. The additional one-fourth share added by the Commissioner represented the profits accruing to petitioner's wife under the terms of the partnership agreement and was duly reported for taxation by her. The Commissioner determined that she "was not, in fact, a member of the partnership for profit purposes" and hence the share of profits reported by her was properly taxable to petitioner. The Tax Court of the United States with five judges dissenting, upheld this determination and the matter has been brought here on petition to review that decision.

Reduced to essentials, the record disclosed the following facts. In December, 1936, Mr. Mauldin, admittedly with the purpose of reducing his tax liability, executed a deed of gift, transferring an undivided one-fourth interest in the Rock Hill Coca Cola Bottling Company, until then operated as a sole proprietorship, to his wife. Shortly thereafter she entered into a partnership agreement with her husband, providing for the continuation of the business as a partnership under petitioner's management, with profits and losses to be divided in accordance with the capital contributed (three-fourths and one-fourth) and with a definite provision that she was under no obligation to devote time or services to the business. The company's books of account seem to have been somewhat rudimentary, without formal capital accounts or a complete record of assets. Accordingly, no entry to record this transfer of ownership was made on the books, but a so-called "Investment" account was set up for Mrs. Mauldin and it was regularly credited with her distributive share of the profits and charged with her withdrawals.

It is not disputed that she had complete independence of action with respect to these profits, was entitled to withdraw them at will and spend her withdrawals as she pleased. Further, she maintained her own investments and handled them herself. During the four years, 1937 through 1940, she withdrew approximately three-fourths of the profits credited to her account. Although there is some evidence in the record that she devoted a limited amount of time to the business, petitioner's counsel stated that no claim was made that she rendered any service to the business and that her participation in the partnership was only that of a contributor of capital.

These arrangements continued through 1939 and apparently their validity was not challenged by the Internal Revenue authorities. In October, 1939, Mr. Mauldin executed another deed of gift, transferring another one-fourth interest to his son, who had been an employee of the business for several years prior thereto. A new partnership was then formed, taking the son in, and the company's franchise was formally reconveyed to this new organization. In these proceedings, the Commissioner did not challenge the validity of this new partnership with respect to the son but contended that, since Mrs. Mauldin had provided neither new capital nor services, she did not become a partner for tax purposes.

In this state of the facts, the law is clear and unequivocal. The function of this Court is limited to determining that the findings of fact by the Tax Court are supported by evidence and have warrant in the record. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248. As stated by Mr. Justice Black in a very recent case involving quite similar facts: "We are of the opinion that the foregoing facts were sufficient to support the Tax Court's finding that the wife was not a partner in the business. [3 T.C. 596.] A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of car-

rying on a trade, profession, or business and when there is community of interest in the profits and losses. When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.' Drennen v. London Assurance Company, 113 U.S. 51, 56, 5 S.Ct. 341, 344, 28 L.Ed. 919; Cox v. Hickman, 8 H.L.Cas. 268. We see no reason why this general rule should not apply in tax cases where the government challenges the existence of a partnership for tax purposes. Here the Tax Court, acting pursuant to its authority in connection with the enforcement of federal laws, has found from testimony before it that respondent and his wife did not intend to carry on business as a partnership. This finding of fact, since supported by evidence, is final." Commissioner of Internal Revenue v. Tower, February 25, 1946, 66 S.Ct. 532, 535. See, also, Lusthaus v. Commissioner, 66 S.Ct. 539, decided the same day.

■ From the same opinion in the Tower case, we adopt the concluding paragraph as an entirely apposite statement of the governing law by which the Tax Court was guided. It is applicable, without change, to the instant case, excepting only the single phrase with reference to the restricted use of the wife's income. This we hold not to constitute a significant distinguishing feature of the present case: "Judged by the actual result achieved, the Tax Court was justified in finding that the partnership here brought about no real change in the economic relation of the husband and his wife to the income in question. Before the partnership the husband managed, controlled, and did a good deal of the work involved in running the business, and he had funds at his disposal which he either used in the business or expended for family purposes. The wife did not contribute her services to the business

and received money from her husband for her own and family expenses. After the partnership was formed the husband continued to control and manage the business exactly as he had before. The wife again took no part in the management or operation of the business. If it be said that as a limited partner she could not share in the management without becoming a general partner the result is the same. No capital not available for use in the business before was brought into the business as a result of the formation of the partnership. And the wife drew on income which the partnership books attributed to her only for purposes of buying and paying for the type of things she had bought for herself, home and family before the partnership was formed. Consequently the result of the partnership was a mere paper reallocation of income among the family members. The actualities of their relation to the income did not change. There was, thus, more than ample evidence to support the Tax Court's finding that no genuine union for partnership business purposes was ever intended and that the husband earned the income. Whether the evidence would have supported a different finding by the Tax Court is a question not here presented." Commissioner v. Tower, supra, 66 S.Ct. at page 538.

In summary, this case merely represents another in the stream of cases now coming before the courts wherein taxpayers have sought by various types of reallocation of income within the family group to retain the enjoyment of a large income without the normally incident tax consequences. This Court recently passed upon another such device which we found to be equally unavailing. Hash v. Commissioner, 4 Cir., 152 F.2d 722. We do not mean that all reallocations of income within a family group are to be set aside for tax purposes. But such arrangements, to be recognized, must have a reality and substance which is not found in the instant case. The decision of the Tax Court of the United States is accordingly affirmed.

Affirmed.

TIMMERMAN, District Judge (dissenting).

Finding myself unable to agree with the majority opinion in this case, I shall state my reasons for disagreeing.

For the purposes hereof it should be kept in mind that we are dealing with facts that relate to two distinct partnerships, which for convenience will be referred to respectively as the 1937 partnership and the 1940 partnership. It should also be kept in mind that no question is raised in this case concerning the annual incomes from the 1937 partnership for the years 1937, 1938 and 1939; and that the primary issue before the Court relates to the profits of the 1940 partnership for the year 1940. The facts concerning the formation of the 1937 partnership and its operation for three years, the full period of its existence, are important as forming a background against which the facts attending the formation and operation of the 1940 partnership must be viewed.

In 1936 petitioner was the sole owner of the Rock Hill Coca-Cola Bottling Works, Rock Hill, S. C., a business which he had operated for a number of years. The character of this business may be inferred from its name. In December, 1936, the petitioner executed a written deed of gift wherein and whereby he conveyed to his wife, in consideration of natural love and affection, "A one-fourth (1/4) interest in and to all of the property and assets used in the business of the Rock Hill Coca-Cola Bottling Works, Rock Hill, S. C. Said assets consisting of bottling machinery, automobile trucks, furniture and fixtures, supplies and the franchise whereby W. M. Mauldin, trading as Rock Hill Coca-Cola Bottling Works, is given the entire and exclusive right to bottle and sell Coca-Cola in the County of York, State of South Carolina. This transfer carries with it the same interest in any and all assets necessary, or used in connection with, the aforesaid business even though not specifically mentioned in the above."

In January, 1937, following petitioner's gift to his wife in December, 1936, petitioner and his wife entered into a verbal contract of partnership and under it continued the operation of the aforementioned business under the name, Rock Hill Coca-Cola Bottling Company. In consequence of the gift and under the terms of the partnership agreement petitioner became the owner of a three-fourths undivided interest in the partnership and his wife the owner of a one-fourth interest, on the understanding that the partners were to share the profits and losses of the partnership in proportion to their respective interests therein; and on the further understanding that petitioner would devote his full time to the management and operation of the partnership business while his wife would not be required to devote any time or to contribute any service. The verbal partnership agreement was reduced to writing in 1939, without material changes in its terms, and it continued in force until January, 1940.

The petitioner made a gift tax return of the gift to his wife, fixing its value at $12,500. However, after the return had been filed, the following notation was endorsed thereon: "Determined at $80,853.-50." So far as the record discloses the validity of this gift was never questioned by anyone until well after the year 1940, and then only by the Commissioner in the proceeding out of which this case arises.

The 1937 partnership functioned during the years 1937, 1938 and 1939. Partnership and individual income tax returns were made for those years which apparently were acceptable. The profits of the partnership were divided three-fourths to petitioner and one-fourth to his wife. The wife had the right to and she did personally withdraw and invest in her own name the greater part of her share of such profits. There is nothing in the record to show, or even to suggest, that the profits accruing to her were used as they formerly had been used, for general household or other family purposes, or that her husband controlled, or attempted to control, the use and enjoyment of her share of said profits; nor is there anything in the record which indicates that petitioner was directly benefited by the use to which the wife put her profits.

We now come to the formation and operation of the 1940 partnership. The petitioner testified without contradiction that he decided in October, 1939, to give his son an interest in the partnership business and

make him a partner therein. The son had been working on a salary basis for the partnership (composed of his mother and father) since 1937.

The Tax Court found as a fact, and I accept it as such, that "Early in 1940 petitioner gave to his son, William M. Mauldin, Jr., about 30 years old, a one-fourth interest in the business, and filed a gift tax return reporting such gift and showing no tax due. The valuation reported for the one-fourth interest was $25,000; a notation thereon indicates the value 'Determined as $122,122.50.' "

Following the gift to his son, petitioner, his wife and son, early in 1940, agreed to form a partnership for the conduct of the bottled coca-cola business in York County, South Carolina. This agreement was later reduced to writing. Among other things, it was agreed by the partners that the petitioner would contribute one-half of the general assets of the partnership business and that the other two would contribute one-fourth each. The petitioner's interest in the partnership was fixed at one-half and the interests of the other two at one-fourth each. It was also agreed that "the net profits or net losses" of the partnership should be "divided in proportion of two-fourths interest to William M. Mauldin, one-fourth interest to Mayme W. Mauldin and one-fourth interest to William M. Mauldin, Jr." (Paragraph XIV, 1940 Partnership Agreement). Additionally it was agreed that petitioner and his son, William M. Mauldin, Jr., should "devote all of their respective time and efforts to the business of the partnership", and that petitioner's wife, Mrs. Mayme W. Mauldin, should "not be required to devote any of her time to the business of the said partnership." (Paragraph X, Partnership Agreement). However, petitioner's wife was not denied participation in the control of the partnership business, as may be seen by reading the partnership agreement. As illustrative of this fact Paragraph VIII of the Agreement is cited; it reads as follows: "That the capital of the partnership, and all other monies as well as all the instructions for the payment of money due, shall be deposited in the name of the partnership, in the Peoples National Bank of Rock Hill, S. C.

and/or any other Bank, Trust Company, and/or place of safe keeping, *as agreement by the parties hereto may determine;* and all monies credited to the partnership shall be subject to withdrawal only by check made in the name of the partnership and *signed by any of the parties hereto 'or by any one designated and given such authority by the parties hereto.*" (Emphasis added.)

Furthermore the partnership agreement took care of the contingency of a dissolution of the partnership by providing that in such case the assets of the partnership should be divided ratably among the partners after payment of all debts due by it.

The partnership as formed, without the right to bottle coca-cola and sell it in York County, would have been of little value and perhaps would have produced little, if any profit. Hence it was highly desirable, even essential, that the partners secure that right. They did. The right is evidenced by a written agreement called "Bottler's Contract". This contract was entered into "by and between The Coca-Cola Bottling Company, a corporation organized and existing under the laws of the State of Delaware, as party of the first part, and Rock Hill Coca-Cola Bottling Company, a partnership composed of W. M. Mauldin, Mayme W. Mauldin, and W. M. Mauldin, Jr., of the State of South Carolina, County of York, and City of Rock Hill, as party of the second part." By its terms all of the partners—not just the petitioner, or even just the petitioner and his son—were given the exclusive rights to bottle and sell coca-cola in York County aforesaid and to use the trade name "Coca-Cola" in the partnership name and business. The franchise thus secured was contributed by the partners to the partnership business, and it constituted the "principal asset" of the partnership. As was found as a fact by the Tax Court, "The contract right to bottle and sell Coca-Cola * * * was the principal asset of the business * * *." In this connection it should be remembered that petitioner's wife, one of the partners in the 1940 partnership, did not get her one-fourth interest in "the contract right to bottle and sell Coca-Cola" from petitioner, her husband, but that she

got it from a Delaware corporation in consideration of binding obligations which she assumed as a signatory of the aforementioned "Bottler's Contract".

Since no element of fraud, actual or constructive, has been shown to have attached to petitioner's gift of 1936 to his wife and since the wife went into immediate possession of said gift and has since completely controlled and enjoyed its profits, thus clearly and unequivocally evincing the intention of both the donor and donee that the gift should be unconditional and absolute, I can reach no conclusion other than that the gift was what it purported to be and was intended to be.

The wife, in 1940, was the owner of a one-fourth interest in the Coca-Cola Bottling Plant in Rock Hill, South Carolina, and had been for three years; and at the beginning of that year she acquired from The Coca-Cola Bottling Company, a Delaware corporation, a one-fourth interest in the right or franchise to bottle and sell Coca-Cola in York County, South Carolina. She contributed all of this to the 1940 partnership and that entitled her to a proportionate share of the profits of said partnership for the year 1940. It follows, therefore, that the Commissioner did not have the power to excuse the wife from income tax liability on her share of said profits or the power to add the wife's share of profits for that year to her husband's share for income tax purposes.

The majority opinion is rested on the authority of Commissioner v. Tower, 66 S.Ct. 532, 90 L.Ed. ——, and Lusthaus v. Commissioner, 66 S.Ct. 539, 90 L.Ed. ——. My position is that the Tower and Lusthaus cases do not support the conclusion reached in the majority opinion, that the Supreme Court has not gone as far as the majority opinion in this case goes.

In the instant case the wife contributed to the 1940 partnership a prior valuable gift from her husband of three years unchallenged standing and enjoyment. No such condition existed in either of the cited cases. The most that is said at this late date against the 1936 gift is that it was made to avoid income taxes, but Mr. Justice Black made it very clear, in his able opinion in the Tower case, that the Supreme Court did not reject the principle announced in Gregory v. Helvering, 293 U.S. 465, 469, 55 S.Ct. 266, 267, 79 L.Ed. 596, 599, 97 A.L.R. 1355, that "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted."

In the Tower case the gift was made three days before the partnership. In the instant case the gift was made more than three years before the 1940 partnership and it had been recognized for income tax purposes prior to 1940. In the Tower case the income from the gift was used as it had been used prior to the gift, for ordinary family purposes. No such condition existed in the instant case. As found by the Tax Court, "Petitioner's wife has been privileged to spend her withdrawals from the business as she pleases. She makes her own investments." I have been unable to find a scintilla of evidence in the record in this case that would warrant the inference that the income from the 1936 gift had been used as it was used prior to the time it was made or that the donor of the gift exercised any control over the income therefrom, or enjoyed any benefits therefrom, except the reduction of his income taxes.

As to the Lusthaus case, a comparison of the facts of that case with the facts of this case will disclose wide marks of difference. For instance, in the Lusthaus case the wife, the purported donee of a gift and the supposed purchaser of an interest in her husband's business, was denied any participation in the control of the so-called partnership business. She was supposedly given $50,000 by her husband, but she *immediately gave it back to him* in purported purchase of an interest in the husband's business. The wife then gave the husband a series of notes ostensibly for the purpose of paying the rest of the purchase price, but on the agreement that the wife's share of the profits of the business should be paid to the husband to satisfy the debts evidenced by the notes. The husband retained full control of the business and the wife was not allowed to draw checks on the business account. Even she could not withdraw any part of her supposed share of the

profits without the husband's consent. No such facts obtain in the instant case; quite the contrary, as has been pointed out hereinabove.

Then, too, we have in the instant case a factor that has no analogy in either the Tower or Lusthaus cases. The wife contributed to the 1940 partnership a one-fourth interest in the "principal asset" of the partnership, an asset without which the partnership business could not have functioned or produced profit—the right to bottle and sell Coca-Cola in York County, South Carolina. She didn't get that interest from her husband by gift, purchase or otherwise; she got it from a Delaware corporation by assuming onerous obligations, the same obligations that her husband (the petitioner) and son had to assume to acquire their respective interests in the right to bottle and sell Coca-Cola. The Tax Court held that the profits of the 1940 partnership were earned by petitioner, but it could as well have held that they were earned by the son, the third party to the 1940 partnership, for it is undisputed that he devoted all of his time and attention to the partnership business, even as his father, the petitioner, did. That holding of the Tax Court contradicts its finding of fact that "The contract right to bottle and sell Coca-Cola" was "the principal asset of the business."

It was held in the Tower case that the question of whether "the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both" is a "question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions'", citing Drennen v. London Assurance Corp., 113 U.S. 51, 56, 5 S.Ct. 341, 28 L.Ed. 919, 921. If that test is to be applied to this case, as undoubtedly it must be, and if due consideration is to be given to the plain provisions of the 1940 partnership agreement and its background, and to the clearly established conduct of the partners "in execution of its provisions", the inevitable conclusion must be that the 1940 partnership was valid, binding and subsisting as to all three partners during the year 1940.

The intention of the partners in this case to become partners in the conduct of a lawful business is as plain as written words and the conduct of the partners can make it.

It is a misinterpretation of the Tower case to say that it holds that a husband and wife cannot become partners for tax purposes. Quite to the contrary, the Court held: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, * * * she may be a partner as contemplated by * * * 26 U.S.C.A. Int.Rev.Code, §§ 181, 182." By the phrase "capital originating with her", the Court undoubtedly meant money or other asset which the wife owned in her own right, regardless of how she may have acquired it. It would be unreasonable to interpret the quoted words as meaning that a wife could not invest money or property which she lawfully acquired by way of gift, inheritance or otherwise in a partnership with her husband or with her husband and another. Simply because a woman is married is no reason for limiting the uses to which she may put her property. In common with all others, she is entitled to the equal protection of the law. We cannot read into the Supreme Court opinion a meaning of antagonism to married women. Moreover, it clearly appears in this case that the wife contributed to the 1940 partnership's capital, in addition to what she got by gift from her husband three years before, a one-fourth interest in the most essential and valuable asset that the partnership held—the franchise to bottle and sell Coca-Cola—and she acquired her interest in that asset by virtue of contract obligations which she assumed with a Delaware corporation.

The judgment of the Tax Court should be reversed and remanded with instructions. That part of the 1940 partnership agreement which undertook to assign a part of the earnings of the petitioner and of his son to petitioner's wife cannot stand up for federal income tax purposes. It is

the purpose of the income tax law to tax earnings as income against those whose services produce them. Cf. Lucas v. Earl 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed 731. For other purposes, a husband may give a part of his earnings to his wife and so may a son give a part of his earnings to his mother, but not so for federal income tax purposes. The one who produces the income must pay the income tax thereon. It follows, therefore, that the profits of the 1940 partnership, for the year 1940, should be re-assigned by crediting both the petitioner and his son with the reasonable value of their respective services to the partnership during the year 1940 before dividing the remaining partnership profits for federal income tax purposes.

For the reasons stated, I dissent.