SOLOMON v. COMMISSIONER OF INTERNAL REVENUE.

No. 6564.

United States Court of Appeals
Fourth Circuit.

Argued April 13, 1953.

Decided May 20, 1953.

Richard E. Thigpen, Charlotte, N. C., for petitioner.

Carolyn R. Just, Special Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack, Special Asst. to the Atty. Gen., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal by the taxpayer, Harry M. Solomon, from a decision of the Tax

Court of the United States, which held that there were deficiencies in taxpayer's income taxes for the years 1945 and 1946, in the respective amounts of $10,220.69 and $7,172.79.

Two questions are presented to us:

(1) Whether the Tax Court correctly determined that a trust created by taxpayer for his three minor daughters was not a bona fide partner during 1945 and 1946 in the S. & B. Solomon partnership with taxpayer, his wife, and four other individuals, of which taxpayer was general manager and the four other partners beside taxpayer's wife were employees; and consequently that the partnership income attributable to the trust is taxable to taxpayer.

(2) Whether the Tax Court correctly determined that during 1945 and 1946, 50% of the mercantile business under the name of the "Beach Shop" is taxable to taxpayer rather than to his wife.

We think the Tax Court correctly answered these two questions, adversely to the taxpayer. The decision of the Tax Court must, therefore, be affirmed.

Taxpayer and Louise F. Solomon, husband and wife, lived in Wilmington, North Carolina. Their three daughters, Marie, Jean and Katherine, were born in 1925, 1926 and 1931 respectively. The S. & B. Solomon Company, Incorporated, was formed in 1932 to engage in the wholesale dry goods business in Wilmington. In 1942 the Bernhard Solomon family (taxpayer's uncle and aunt) desired to liquidate their half interest in the corporation.

On June 20, 1942, articles of partnership, under the firm name and style of S. & B. Solomon, for the purchase of the assets of the corporation, were duly executed by taxpayer, his wife, several principal employees of the old corporation, and taxpayer as agent for his three minor daughters, under which each daughter was to have a ten-percent interest in the partnership. Taxpayer was to be general manager at an annual salary of $6,000. On July 1, 1942, the partnership executed a note for $90,-000, payable to the old corporation, which

was endorsed by all the individuals named in the partnership agreement, with the exception of taxpayer's three minor daughters.

On December 24, 1942, taxpayer, as grantor executed a "Trust Agreement" with the Peoples Savings Bank & Trust Company, as trustee, for the benefit of his three minor daughters. The trust agreement provides in part as follows:

"The Grantor has this day paid over to the said Trustee the sum of $2,400.-00 in cash, the receipt whereof is hereby acknowledged, which sum is to be forthwith paid by the Trustee to S. & B. Solomon, a partnership located in the City of Wilmington, County of New Hanover, North Carolina, and is in payment of the partnership interest which the beneficiaries hereunder have in and to the general partnership of S. & B. Solomon, * * *."

*      *      *      *      *      *

"When and as each beneficiary shall have attained the age of thirty years, the Trustee is directed to forthwith pay over and deliver to said child or children as they reach thirty years of age, the entire principal interest of the said child in said Trust, and her share of the accrued income not previously distributed, * * *."

*      *      *      *      *      *

"All profits or income received by the Trustee from the partnership during the ten-year period shall be held by the Trustee, for the said beneficiaries and the only investment made therefrom shall be to loan said money to said partnership (save such amount as may be necessary to pay Trustee's commissions and all taxes), * * *."

*      *      *      *      *      *

" * * * the said Trustee herein named shall not have the power or authority to enter into or to participate in the general operation and management of the partnership, other than to receive the income and profits due the said beneficiaries hereunder during the first ten years, * * *."

On December 24, 1942, the taxpayer drew his personal check to the order of the trustee in the amount of $2,400 and on December 29, 1942, the trustee drew its check to the order of the S. & B. partnership for the capital contribution of the three beneficiaries of the trust. During the period July 1, 1942, to June 30, 1946, the trustee for Marie, Jean and Katherine Solomon received distributions of income from the partnership aggregating $59,323.29 of which amount the sum of $19,774.43 was allocated to each of the three beneficiaries of the trust. During the same period the trustee did not make any distributions of trust income or capital to any of the beneficiaries of the trust, except for the payment of federal and North Carolina income taxes due each year.

On March 13, 1947, an agreement was executed transferring the assets of the S. & B. Solomon partnership to a new corporation to be known as S. & B. Solomon, Inc., and dissolving the partnership as of June 30, 1946. The trustee of the trust for Marie, Jean and Katherine Solomon was to receive a proportionate interest in the new corporation evidenced by stock and debentures in exchange for the interest of the trust in the S. & B. Solomon partnership. No distributions of trust income were made by the trustee to the three beneficiaries prior to January 7, 1948. Between the latter date and January 3, 1952, the trustee distributed to each of the three beneficiaries the sum of $1,750.

On December 19, 1944, the partnership of S. & B. Solomon borrowed from the trustee of the trust the sum of $15,000 on its note bearing 3% interest. On May 2, 1947 the taxpayer borrowed from the trust for his three children the sum of $10,000 on his note bearing 3% interest. This note was paid on December 16, 1947. On December 17, 1947, the taxpayer borrowed from such trust the sum of $21,000 for which amount he gave his note. The proceeds of this loan were used by the taxpayer as part payment of his income tax liability for prior years. On May 12, 1948, the trust borrowed the sum of $10,000 from the Peoples Savings Bank & Trust Company on its secured note at 2½%, and on the same day the trust loaned to the taxpayer the sum of $10,000 on his demand note bearing 3% interest. On July 1, 1948, the taxpayer paid to such trust the sum of $1,500 on his note in the face amount of $21,000. On December 31, 1951, the taxpayer was indebted to the trust in the amount of $29,500.

Neither the trustee nor any of the minor beneficiaries participated in the policy making of, or rendered any services to, the partnership. The trustee was expressly prohibited from so doing and, indeed, there is something anomalous in the idea of a bank, even as trustee, being a partner in a commercial business.

The partnership agreement signed by taxpayer, as agent for his three children, and the trust agreement appear not to have been supplemental. The trustee neither executed a partnership agreement nor signed notes of the partnership. Taxpayer retained the substance of the full enjoyment of all the rights he had previously enjoyed in the property he gave to the trust. The alleged partnership interest of the trust served no business purpose. There was no change in the operation or management of the business. The trust instrument prohibited the trust from participating in the operation or management of the business; made the investment of the trust corpus in the partnership mandatory, prohibited distributions to the beneficiaries out of income, and gave the trust no choice of either remaining out of the partnership or of terminating or transferring its interest. The loans made by the trust to the partnership and to taxpayer individually were twenty times the amount of the gift capital put into the partnership by the trust. Distributions to the trust in four years were twenty-five times the amount of this gift capital.

Taxpayer testified that when the partnership agreement of June, 1942, was signed there was no thought of the creation of a trust, and that he intended to make the minor children partners, not the trust. Six months later when taxpayer created the trust on advice of his counsel, no new partnership agreement was executed which

the trustee or beneficiaries signed; nor did the trustee endorse the note given in payment of the assets of the partnership acquired from the corporation. As the Tax Court stated, the record does not show that the beneficiaries were informed that they had been made partners. There is nothing in the record to show the acceptance of the trust as a partner by the other partners. There is nothing to indicate that taxpayer intended that any of the beneficiaries would ever be taken in as true partners.

Neither the trust nor the beneficiaries made any original capital contribution to the partnership. Taxpayer still retained the substance of his rights in the partnership. For tax purposes, the taxpayer cannot eat his cake and have it too. We have here the familiar pattern of an allocation of income by the real earner thereof within the family group through an alleged partnership quite lacking in economic reality and business purpose.

We find nothing to militate against our decision in the test set out by Chief Justice Vinson in the well known case of Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659:

"* * * whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."

See, also, Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Stanback v. Robertson, 4 Cir., 183 F.2d 889; Economos v. Commissioner, 4 Cir., 167 F.2d 165, certiorari denied 335 U.S. 826, 69 S.Ct. 53, 93 L.Ed. 380; Mauldin v. Commissioner, 4 Cir., 155 F.2d 666;

Hash v. Commissioner, 152 F.2d 722, certiorari denied 328 U.S. 838, 66 S.Ct. 1013, 90 L.Ed. 1614, rehearing denied 328 U.S. 879, 66 S.Ct. 1340, 90 L.Ed. 1647.

Taxpayer relies heavily on the case of Armstrong v. Commissioner, 10 Cir., 143 F.2d 700. In that case the Court of Appeals for the Tenth Circuit based its decision on a factual determination that the taxpayer had divested himself of all economic benefit or interest in the trust estate or in the income therefrom. The facts in the Armstrong case were distinguished by our Court in Hash v. Commissioner, 152 F. 2d 722, 725.

Apparently, the case most favorable to the taxpayer here is Miller v. Commissioner, 6 Cir., 203 F.2d 350. We think these extracts from the opinion of Circuit Judge McAllister in the Miller case clearly distinguish it from the instant case.

"Prior to the making of the above named trusts, Sam H. Miller and Florence R. Miller, his wife, as copartners, owned equal interests of $60,000 each in a drug store business. During the year 1940, the Millers had lost a prominent location for one of their stores in Butler, Pennsylvania, when a large chain store corporation had acquired the lease. At that time, they felt it was necessary to secure another location in that city, and, in making arrangements to purchase a drug store, they called on Mr. Miller's father, W. R. Miller, for financial assistance. Thereafter, during the fall of 1940, Mr. and Mrs. Miller had many talks with W. R. Miller on the subject, and it was finally agreed among all of them that the elder Miller would invest $15,000 in the business in order to purchase the drug store in question, subject to certain conditions. In the first place, this sum of $15,000 was to be used to secure interests of $5,000 to each of the three children of Sam H. Miller and Florence Miller.

* * * * * *

"It is to be said, moreover, in the case before us, that the trustees have not, during the entire period since the

trusts were first created in 1940, taken any compensation whatever for their services which were of an important managerial nature, and as a result of which the business in question became most successful. Moreover, they have taken no profits or income whatever out of the business represented by their own shares therein, but have continued to devote it all to the success of the enterprise.

\*   \*   \*   \*   \*   \*

"Their three children, however, are all students at a pharmacy college, preparing to follow the business of druggists, which may indicate that the inducement of giving them an interest in the business has stimulated them to study and prepare themselves in this field of endeavor. If the Millers executed these trust instruments for the benefit of their children, for their financial security, and to give them an interest in the drug business and an incentive to engage therein, these trusts are valid and it follows that the Millers thereby intended to form a real business partnership with the children, or with themselves, as trustees for the children."

We are led to the conclusion that the Tax Court was not clearly erroneous in finding in the instant case that the trust should not be considered a partner for federal tax purposes.

This brings us to the second question in this case—whether the Tax Court was clearly erroneous in holding, for the tax years 1945 and 1946, that one-half of the income from the Beach Shop is taxable to taxpayer. We think this holding of the Tax Court must be affirmed.

In 1930 a partnership, known as Brown and Solomon, composed of taxpayer and W. T. Brown, started the Beach Shop and operated it each summer from that time on. The Brown and Solomon partnership also carried on real estate operations at Carolina Beach. In 1941 the small building burned which the partnership had leased for the Beach Shop, and after the fire the partnership erected a building adjacent to the former premises. The Beach Shop reopened in part of the new building in 1942. Taxpayer contends that when the shop reopened it was no longer operated by Brown and Solomon, but by a partnership of Solomon and Brown, composed of Mrs. Solomon and Mrs. Brown.

There is very little in the record to show the existence of such a partnership. No partnership agreement was executed by Mrs. Brown and Mrs. Solomon. Neither Mrs. Brown nor Mrs. Solomon contributed any capital. Practically all the merchandise purchased by the Beach Shop for resale was obtained on credit from the S. & B. Solomon partnership in Wilmington. Mrs. Solomon made out no purchases of merchandise during the taxable years although she had a personal bank account. There was some testimony that her credit was relied on but she had no separate property that would have caused a disinterested seller of merchandise to the Beach Shop to rely on her credit. Taxpayer admitted making purchases for the Beach Shop during 1945 and 1946.

During the taxable years Mrs. Solomon lived in Wilmington and visited Carolina Beach, which is fifteen miles away, only on alternate Saturdays when she accompanied her husband who went there to collect rents, to check the Beach Shop sales, and to collect the receipts from the operations of the Beach Shop. Mr. Brown made the collections on weekends when the taxpayer did not do so. The receipts from all these collections were put into the same bank account in Wilmington carried in the name of Brown and Solomon partnership. Only the taxpayer and Mr. Brown could draw on that account. Neither Mrs. Solomon nor Mrs. Brown had authority to draw checks on that account during the taxable years. Mrs. Solomon rendered practically no services during the taxable years and Mrs. Brown rendered none because of illness.

There was evidence that Louise Solomon, taxpayer's wife, did take an active part in running the Beach Shop in 1942, but taxpayer's counsel admits in his brief: "In later years she employed managers and clerks to run the shop and spent very little time there." Also there was testimony

that in 1949–1950 and 1950–1951 (several years after the tax years 1945 and 1946), a merchant's privilege tax was paid by Louise Solomon and Hattie Brown.

On this record, we cannot overturn the Tax Court's holding that during the tax years Mrs. Solomon and Mrs. Brown did not, as a partnership, in reality and good faith carry on with a business purpose the operations of the Beach Shop.

The decision of the Tax Court of the United States is affirmed.

Affirmed.